Ralph C. SHAGER, Plaintiff–Appellant,

v.

UPJOHN COMPANY and Asgrow Seed
Company, Defendants–Appellees.

No. 89–3642.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1990.

Decided Sept. 17, 1990.

Michael R. Fox, Mary E. Kennelly, Fox, Fox, Schaefer & Gingras, Madison, Wis., for plaintiff-appellant.

Terry L. Moore, Terrence R. Spaeth, Herrick, Hart, Duchemin & Danielson, Eau Claire, Wis., for defendants-appellees.

Before WOOD, Jr., CUDAHY, and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Ralph Shager appeals from the dismissal of his suit under the Age Discrimination in Employment Act (29 U.S.C. §§ 621 *et seq.*), following a motion for summary judgment made by his former employer, the Asgrow Seed Company, and its successor and codefendant, Upjohn Company. The grant of summary judgment was proper only if, on the facts before the district judge, taken as favorably to Shager as the evidence permitted, no reasonable jury could conclude that Asgrow had fired him because of his age.

Shager was employed by a manufacturer of seeds that was bought by Asgrow in 1983, when he was fifty years old. His job was sales representative for the State of Wisconsin, and required him to supervise the company's sales force in the state—a force of farmers working parttime as seed salesmen. Asgrow kept Shager, at first with the same responsibilities. He reported to John Lehnst, Asgrow's youngest district manager (thirty-five years old in 1983), who was in charge of the company's sales representatives in several midwestern states. There were nine such representatives, six older than Lehnst, of whom five were in their fifties.

Shortly after the acquisition, Asgrow hired a second sales representative for Wisconsin, Eugene Stouffer. Stouffer was forty-eight years old, and Lehnst, troubled by the disparity in ages between himself and most of his subordinates, asked Stouffer several times during the pre-hire interview whether he would mind being supervised by a younger man; he said he would not. After Stouffer came on the scene, Lehnst divided the Wisconsin territory into a northern and a southern part—rejecting Shager's suggestion that it be divided along east/west lines instead. The northern part was more challenging; it was larger and its farmland was of poorer quality, depressing the demand for seeds. Lehnst assigned the northern part to Shager and the southern to Stouffer.

In 1985 Lehnst approached, actively recruited, and hired Lane Schradle to be a third Wisconsin sales representative. Schradle was twenty-nine years old and had no previous experience in the seed business. Wisconsin was not generating enough business to justify a third sales representative, and Lehnst anticipated having eventually to eliminate one. But for now he merely redivided the territories. Shager retained the infertile northern part—shorn moreover of some of its best

areas. Stouffer was given the southeastern part of the state, and Schradle the southwestern part plus several counties in northern Illinois. Schradle's was the richest of the territories from the standpoint of marketing seeds; Shager's remained the poorest. After Shager was fired, the state was divided between the two remaining sales representatives along east-west rather than north-south lines—as he had suggested.

Although the 1985 division made it difficult for Shager to reach the sales goals set for him by Lehnst, he not only reached but surpassed them, while Schradle failed to meet the modest goals (modest considering the richness of his territory) that Lehnst had set for him. In fact, Schradle's total sales were far below Shager's, despite the difference in sales potential between the two territories. Shager appears to have bested Stouffer as well. Nevertheless, in the next semi-annual written evaluation of the sales representatives' performance, in April 1986, Lehnst rated the sales performance of both Shager and Schradle marginal, but then went on and made excuses for Schradle's poor performance, such as a poor harvest the previous season and Schradle's lack of experience in the seed business. Meanwhile, Lehnst had placed Shager on probation for alleged deficiencies in collecting accounts receivable from customers in his territory, and in the management of salesmen. When the deficiencies persisted, Lehnst recommended to Asgrow's "Career Path Committee," which reviews personnel actions, that Shager be fired; and in July 1986, he was.

There is evidence that Shager's deficiencies were exaggerated and in any event that they pale beside his outstanding sales performance, inexplicably rated marginal by his hostile supervisor. There is also some although not much evidence of Lehnst's animosity toward older workers. He was heard to say to one of Shager's younger salesmen, "These older people don't much like or much care for us baby boomers, but there isn't much they can do about it." He also was heard to make frequent comments to the effect that "the old guys know how to get around things."

And in Schradle's first performance evaluation, Lehnst wrote: "It is refreshing to work with a young man with such a wonderful outlook on life and on his job," though in fact Schradle's performance had not been distinguished.

The district judge acknowledged that, for the purpose of his deciding whether Shager had made out a prima facie case of discrimination by the method authorized for race cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and extended to age cases in *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219 (7th Cir.1980) (per curiam), Asgrow's retaining young Schradle while discharging old Shager was the equivalent of replacing an old by a young worker. *Oxman v. WLS–TV*, 846 F.2d 448, 453–56 (7th Cir.1988); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 95–97 (7th Cir.1985). The contrary position not only would license age discrimination in virtually all cases in which an employer was reducing the overall size of his work force, but also would encourage employers to fire unwanted workers in two stages—first hiring the replacement worker and then, after a decent interval had elapsed, firing the unwanted one.

But the fact that an older worker is treated worse than a younger one—here, that Shager was (in effect) replaced by a younger man—is not enough to establish a prima facie case of age discrimination. Shager was required to show that his performance in the job was adequate. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 462–63 (7th Cir.1986). This requirement may seem to—in fact does, rather—confuse the question of which party bears what burden of producing evidence either to stave off trial (the defendant's goal) or to stave off the dismissal of the case on the defendant's motion for summary judgment (the plaintiff's goal). Under the approach of *McDonnell Douglas*, applied to age discrimination cases, once the employee shows that he was replaced by a younger person even though he was performing up to his employer's expectations, the burden shifts to the employer to present evidence that

the employee was replaced for a reason unrelated to his age or that of his replacement. Such a possibility might however seem excluded by one of the determinations necessary to place this burden of production on the employer—namely that the replaced employee had been performing up to the employer's expectations. Not quite. The replaced employee might be adequate but the replacement superior; or the employer might be forced by rising costs or declining demand for his product to reduce the size of his work force even though all his workers were doing their jobs adequately. So the inquiries can coexist, though there is much overlap between them.

■ Asgrow presented evidence that Shager's deficiencies in account management and personnel supervision dragged him below the level of expected performance. This submission, whether addressed to Shager's initial burden of production—his burden of producing evidence not only that he was replaced by a younger person but also that he was performing up to his employer's expectations—or designed to place on Shager the burden of producing evidence of pretext, required him to submit evidence that he had not been fired because his performance was inadequate. He could satisfy this burden with evidence either that he was a satisfactory employee or that Asgrow's real concern was, in any event, his age—for of course direct proof of age discrimination is a permissible alternative (or, as here, supplement) to dancing through the *McDonnell Douglas* quadrille. *Oxman v. WLS-TV, supra,* 846 F.2d at 452.

The district judge concluded that Shager had failed to present evidence either that he was fulfilling his employer's expectations or that the motive for firing him was his age; in this connection the judge remarked that Lehnst's comments about age were too isolated and ambiguous to demonstrate hostility to older workers. Yet Shager had presented evidence that his alleged performance deficiencies were a pretext for firing him—evidence not only that those deficiencies were greatly exaggerated but also that they were offset by his skill and energy in generating a good sales performance in an unpromising territory. The picture that emerges is of a worker who like the rest of us had the weaknesses of his strength. In his zeal to sell he failed to attend as assiduously as he might have done to the drabber managerial aspects of his job, but his *overall* performance was outstanding, or at least as good as that of his peers, and better than that of the young man who was retained when he was fired. True, all this is so only when the evidence is viewed as favorably to Shager as reason will permit, but that is the proper viewpoint when the question is whether summary judgment should have been granted to his adversary.

■ Of course it is not a violation of the age discrimination law to fire an employee for insufficient cause, merely because the employee is more than forty years of age and is replaced by a younger person. *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989); *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557 (7th Cir.1987); *Dale v. Chicago Tribune Co., supra,* 797 F.2d at 464. The statute is not a guarantee of tenure for the older worker, although not all juries understand this. But the question before us in reviewing the grant of summary judgment is only whether Shager produced evidence from which a rational factfinder could infer that the company lied in saying that it fired Shager because he was an unsatisfactory worker. If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn. This is the common sense behind the rule of *McDonnell Douglas.* It is important to understand however that the inference is not compelled. The trier of fact must decide after a trial whether to draw the inference. The lie may be concealing a reason that is shameful or stupid but not proscribed, in which event there is no liability. *Pollard v. Rea Magnet Wire Co., supra,* 824 F.2d at 559. The point is only that if the inference of improper motive *can* be drawn, there must be a trial. When Shager presented evidence that he was not an

inadequate worker—that he satisfied the employer's legitimate expectations and therefore had not, as Asgrow contended, been fired for failing to satisfy them—he surmounted the only hurdle that remained to the denial of the employer's motion for summary judgment.

In fact he presented more evidence than he had to. This is not a case where the plaintiff's only evidence of age discrimination is that he was replaced by a younger worker and that the stated ground for firing him is spurious. That would be the kind of case that just barely survives the employer's motion for summary judgment: a case where the evidence of discrimination is entirely circumstantial, indirect. Shager produced direct evidence of hostility to older workers on the part of Lehnst, his supervisor. Judge Shabaz considered the comments on age attributed to Lehnst to be ambiguous. That they were. But the task of disambiguating ambiguous utterances is for trial, not for summary judgment. On a motion for summary judgment the ambiguities in a witness's testimony must be resolved against the moving party. When that is done here, this becomes a case in which a young supervisor predominantly of much older workers, uncomfortable with the disparity in age between him and them, hires a young worker in the hope of replacing one of the older workers with him; comes down hard on the older worker's deficiencies while supplying excuses for the greater deficiencies of the younger worker; and finally persuades his supervisors to endorse his decision to fire the older worker. A plaintiff who makes such a case in resisting the defendant's motion for summary judgment does not need the help of *McDonnell Douglas* to resist the motion. He walks as it were without crutches. For he has presented enough evidence to defeat a motion for summary judgment under the general test for the grant of such a motion, alluded to at the outset of this opinion: if this were the trial rather than a summary judgment proceeding, would the judge be required to grant a directed verdict to the party seeking summary judgment? *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ We do not hold that any and all words in praise of youth expose an employer to a trial under the age discrimination law. We have no quarrel with the holding in *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir.1990), that the employer's motion for summary judgment was not to be defeated by his statement that the replacement employee had been hired because he was a "bright, intelligent, knowledgeable young man." Cf. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984). For all that appears, "young" in this string is a descriptive, not an evaluative, term. No doubt there is some ambiguity, but not enough: the favorable connotations that cluster around the term "young man" are too tepid to create, in themselves, a triable issue of age discrimination. Admittedly the emphasis in *Merrick* is not on the ambiguity of the utterance but on its being a "stray remark." Some stray remarks in the opinions in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), addressed to the issue of stray remarks in discrimination cases, bid fair to create a doctrine of "stray remarks." Besides *Merrick*, see *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989). But all that these cases really stand for is the common-sense proposition that a slur is not in and of itself proof of actionable discrimination, even if repeated. The remark taken to be a slur may have been innocent and misunderstood; or it may have had no consequence, either because it did not reflect the thinking of the people with decision-making authority or because it did not motivate even the person uttering it to act on it. It thus may fall far short of establishing a prima facie case. Even so, it may be relevant evidence, with greater or less probative value depending on the precise character of the remark. *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir.1990), found that utterance of the adage "old dogs won't hunt" was evidence of age discrimination. To praise the young (*Merrick*) may be impliedly to depreciate the old; but to de-

preciate the old explicitly (*Siegel*) is to replace implication with asseveration. Here we have both forms of evaluation combined with evidence that the employer's stated reason for firing an older employee and replacing him with a younger one was insincere. The ensemble is sufficient to defeat summary judgment.

Asgrow even flunks the "practical" test for summary judgment, which is whether the nonmovant has a fighting chance at trial. *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 299 (7th Cir.1990); *Palucki v. Sears, Roebuck & Co.*, supra, 879 F.2d at 1572–73; *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 367 (7th Cir.1983). The growing difficulty that district judges face in scheduling civil trials, a difficulty that is due to docket pressures in general and to the pressure of the criminal docket in particular, makes appellate courts reluctant to reverse a grant of summary judgment merely because a rational factfinder *could* return a verdict for the nonmoving party, if such a verdict is highly unlikely as a practical matter because the plaintiff's case (or the defense, in the rare case where it is the plaintiff's motion for summary judgment that was granted) is marginal. But this is not such a case, especially when we consider that the usual factfinder in an age discrimination case is a jury, not a judge as in a Title VII case. A judge's decision to grant a motion for summary judgment may be a good predictor of the outcome of a bench trial before the same judge; it may not be a good predictor of the outcome before a jury.

■ Asgrow has, however, several other strings to its bow. The first is an argument that its retention of Stouffer, who was only a few years younger than Shager, proves that Shager was not fired because of his age. To this Shager replies, more colorfully than cogently, that it is no defense to murder to list the people whom the defendant did not murder. Suppose however that the defendant's incentive, opportunity, etc. to murder A was as great as his incentive, opportunity, etc. to murder B, the actual victim; then it would be, not a defense of course, but at least a talking point, to note the defendant's failure to attack A. We must remember, however, that the issue before us is not whether Shager was in fact fired because of his age, which remains to be determined at trial, but whether the question whether he was fired because of his age is genuinely contestable; it is.

It is genuinely contestable for the further reason that Stouffer and Shager were not identically situated. Stouffer was old by Lehnst's standards but had assured Lehnst that he had no problem with being supervised by a much younger man. He was docile old. Shager was, perhaps, "uppitty" old. An employer can fire a worker for being uppitty or for any other reason good or bad, without violating the age discrimination law, provided that the reason is not the worker's age. But if the employer would not fire an uppitty worker unless he was also an old worker—if it admired high spirits and an independent attitude only in the young—then age would be a causal factor in the worker's termination. This may have been the case with Asgrow's firing Shager while retaining Stouffer.

The statute does not protect merely the older worker who is perfect from the standpoint of his employer; such a worker needs no protection except from irrational employers, and they are rare. It protects, as a practical matter, the imperfect older worker from being treated worse than the imperfect younger one. Cf. *Riordan v. Kempiners*, 831 F.2d 690, 697–98 (7th Cir. 1987).

Beyond all this it should be noted that Lehnst had not hired Stouffer, but had merely interviewed him to be hired—and until Shager filed this suit, Stouffer too was on the skids. He had been placed on probation for poor performance and a "negative attitude." Magically restored to the company's good graces when this suit was filed, Stouffer was taken off probation. A final point is that by getting rid of Shager even while retaining Stouffer, Lehnst at least reduced the number of older workers under his supervision, though did not reduce it as far as if he had gotten rid of Stouffer too.

■ But we must consider whether hostility on the part of Lehnst to older workers can be imputed to Asgrow. If it cannot be, then Asgrow's case for summary judgment is strengthened. The discharge of Shager was approved by Asgrow's "Career Path Committee," and assuming, as the parties do—though the record is surprisingly meager on the point—that Lehnst was not a member of the committee, there is no evidence that any of its members harbored any hostility to old workers or preference for young ones. Asgrow contends that the committee is a nonconductor that shields the company from liability for the wrong of employee Lehnst.

■ The common law rule is that an employer is liable for intentional torts of its employees committed in furtherance of their employment, a condition satisfied here. *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 817 (7th Cir.1985); *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1421–22 (7th Cir.1986). The rule usually is carried over to statutory torts, because statutes creating torts rarely bother to set forth all the ancillary doctrines—governing such issues as causation, immunity, or, here, derivative liability—that are necessary to compose a complete regime of tort liability. 42 U.S.C. § 1983 is a famous example of an incomplete tort statute on which the courts have engrafted all sorts of common law doctrines to make it workable—although not respondeat superior.

The Age Discrimination in Employment Act is not completely silent on the issue of agency. The Act imposes liability only on employers, but defines "employer" to include "agent," 29 U.S.C. § 630(b), a term that embraces but is more encompassing than "employee": all employees are agents, but not all agents are employees. So it may seem obvious that Asgrow is responsible for Lehnst's discriminatory actions. In fact this inference is not compelled. The statutory language that we have quoted could mean nothing more than that Lehnst, the agent, is liable along with Asgrow, or even possibly instead of Asgrow. Shager could have sued Lehnst (perhaps, on this reading, only Lehnst), but

did not. *House v. Cannon Mills Co.*, 713 F.Supp. 159, 159–62 (M.D.N.C.1988), and cases cited there. On this understanding, the statute is silent on the issue of derivative liability and it is thus left to the courts to decide as a matter of federal common law whether to apply the doctrine of respondeat superior in age discrimination cases.

A further and considerable complication, however, comes from the fact that in interpreting the same definition of "employer" in Title VII, the Supreme Court has held that it "surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). That was a case of sexual harassment by a coworker of the plaintiff, and the Court held that the coworker's misconduct was not automatically to be ascribed to the employer. Later cases, illustrated by *Brooms v. Regal Tube Co.*, 881 F.2d 412, 421 (7th Cir.1989), hold that the employer, to be held liable for sexual harassment of one worker by another, must know or have reason to know of the harassment and fail to take prompt and effective measures to correct it.

The rule that falls out of *Meritor* and the cases following it is less a derivation from the statutory language than a recognition of the unrealism of expecting an employer to be able to purge every trace of sexual harassment from the workplace; so strict liability would add nothing to liability based on fault. Concern with the futility of derivative liability is absent where the challenged action is not harassment, whether on sexual or other grounds, by a fellow employee but discharge by a supervisory employee. The deliberate act of an employee acting within the scope of his authority is the act of the employer, for an employer, at least where it is a corporation, acts only through agents. *Hunter v. Allis–Chalmers Corp., supra*, 797 F.2d at 1422; *North v. Madison Area Ass'n*, 844 F.2d 401, 407 (7th Cir.1988). This much derivative liability (if that is what it should be called) surely survives the *Meritor* line of cases; if it did not, the Age Discrimina-

tion in Employment Act would have a very soft bite indeed.

The cases such as *Meritor* that place limitations on the employer's liability in harassment cases, and the cases such as *Hunter* that affirm the employer's liability for the acts of its supervisors, may seem in tension with each other, as remarked in *Brooms v. Regal Tube Co., supra,* 881 F.2d at 420–21. But in fact they are consistent both with each other and with the common law rule of respondeat superior. Discrimination is an intentional tort and as we noted earlier an employer is liable for the intentional torts of an employee only if they are in furtherance (though possibly misguided) of the employer's business, implying some relation between the tort and the business. If one low-level employee makes sexual advances to another, his conduct is so unrelated to the employer's business that the employer will ordinarily be excused from liability under the doctrine of respondeat superior; the employer's own fault must be shown. But a supervisory employee who fires a subordinate is doing the kind of thing that he is authorized to do, and the wrongful intent with which he does it does not carry his behavior so far beyond the orbit of his responsibilities as to excuse the employer. Restatement (Second) of Agency § 228 (1958). From the outside, at least, it looks as if he is doing his job, which is not the case when one worker sexually harasses another; and the appearance of authority provides a rough-and-ready criterion of respondeat superior—which is not to say that there must be the same "apparent authority" as would be necessary to bind Asgrow to a contract made by Lehnst with a third party. *Id.,* § 140(b). In both sorts of case, however, the ultimate concern is with confining the employer's or principal's liability to the general class of cases in which he has the practical ability to head off the injury to his employee's, or other agent's, victim.

All that follows, though, is that if Lehnst had fired Shager, Asgrow would be liable whether or not anyone else connected with the company was at fault. Lehnst did not fire Shager; the Career Path Committee did. If it did so for reasons untainted by any prejudice of Lehnst's against older workers, the causal link between that prejudice and Shager's discharge is severed, and Shager cannot maintain this suit even if Asgrow is fully liable for Lehnst's wrongdoing. *La Montagne v. American Convenience Products, Inc., supra,* 750 F.2d at 1412. But if Shager's evidence is believed, as in the present posture of the case it must be, the committee's decision to fire him was tainted by Lehnst's prejudice. Lehnst not only set up Shager to fail by assigning him an unpromising territory but influenced the committee's deliberations by portraying Shager's performance to the committee in the worst possible light. Lehnst's influence may well have been decisive. The committee's deliberations on the question whether to fire Shager were brief, perhaps perfunctory; no member who was deposed could remember having considered the issue. A committee of this sort, even if it is not just a liability shield invented by lawyers, is apt to defer to the judgment of the man on the spot. Lehnst was the district manager; he presented plausible evidence that one of his sales representatives should be discharged; the committee was not conversant with the possible age animus that may have motivated Lehnst's recommendation. If it acted as the conduit of Lehnst's prejudice—his cat's-paw—the innocence of its members would not spare the company from liability. For it would then be a case where Lehnst, acting within (even if at the same time abusing) his authority as district manager to evaluate and make recommendations concerning his subordinates, had procured Shager's discharge because of his age. Lehnst would have violated the statute, and his violation would be imputed to Asgrow. The committee would be out of the picture. It would no more be a nonconductor, insulating the company from liability for Lehnst's misconduct, than would be the secretary who typed Shager's discharge papers knowing nothing of the age discrimination that lay behind the discharge.

■ Asgrow's last argument is that because Shager waited more than two years before filing this suit, he must prove a

willful violation of the Age Discrimination in Employment Act in order to avoid the bar of the statute of limitations. 29 U.S.C. § 626(e)(1) (incorporating 29 U.S.C. § 255), and failed to do so. The word "willful" is a chameleon, but as used in the ADEA is designed to shield the employer who violates the Act without knowing it. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–35, 108 S.Ct. 1677, 1681–82, 100 L.Ed.2d 115 (1988); *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988). Suppose for example that the employer, appealing to the statutory provision that permits discrimination on grounds of age when it is reasonably necessary to the operation of the employer's business, 29 U.S.C. § 623(f)(1), imposes a mandatory retirement age on a class of workers that it believes incapable of working effectively in its business beyond that age. *Heiar v. Crawford County*, 746 F.2d 1190, 1197–99 (7th Cir.1984). The belief is incorrect—even unreasonable—but sincere. The employer's action would not be willful discrimination. *McLaughlin v. Richland Shoe Co.*, supra, 486 U.S. at 133–35, 108 S.Ct. at 1681–82. It would be willful only if the employer knew he was violating the Act or—what amounts to the same thing—was indifferent to whether he was violating it or not: the state of mind the law calls "reckless disregard." *Id.; AM-PAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1042 (7th Cir.1990).

But if there was discrimination here, it may well have been willful. Lehnst felt uncomfortable with the older workers under his supervision. He set up one of them, Shager, perhaps one of the more independent ones, for failure, by giving him a lousy territory in a division of territories for which there was no sound business rationale; then brought in a younger worker whom he didn't need; then fired the older worker on trumped-up charges while covering the failures of the inadequate younger worker who was his protegé. This is a lurid account; it may not be accurate; but that is for the jury to decide. If it is accurate or nearly so, then Lehnst and through him Asgrow were guilty of a willful violation of the age discrimination law, quite apart from the fact that Lehnst was given specific instruction on compliance with the Age Discrimination in Employment Act before the events that culminated in Shager's discharge.

"[A]nd through him Asgrow ...": Once again it should make no difference that the Career Path Committee was not (so far as appears) deliberately violating the Act when it fired Shager on Lehnst's recommendation. Asgrow is responsible for Lehnst's misconduct, itself a violation of the Act by virtue of Lehnst's status as an agent acting within the scope of his authority, even though Lehnst's conduct was willful and unauthorized. Restatement, *supra*, § 231; Prosser and Keeton on the Law of Torts 505 (5th ed. 1984). If the rule were different, the establishment of corporate committees authorized to rubber stamp personnel actions would preclude a finding of willfulness no matter how egregious the actions in question.

If the Career Path Committee was not a mere rubber stamp, but made an independent decision to fire Shager, not only would there be no ground for finding willful misconduct by Asgrow, there would be no ground for finding even an innocent violation of the Act. (*La Montagne v. American Convenience Products, Inc.*, supra, 750 F.2d 1405, 1412, was such a case.) These, however, are questions to be explored at trial.

So we must reverse. We are not entirely happy in doing so, being perplexed that the middle-aged should be thought an oppressed minority requiring the protection of federal law. But that is none of our business as judges. We also are sympathetic to the argument that if Asgrow allowed Lehnst to push out a good worker because of Lehnst's own insecurity as a supervisor, Asgrow will pay a price in the competitive marketplace, and that the threat of such market sanctions deters age discrimination at lower cost than the law can do with its cumbersome and expensive machinery, its gross delays, its frequent errors, and its potential for rigidifying the

labor market. But this sanguine view of the power of the marketplace was not shared by the framers and supporters of the Age Discrimination in Employment Act, and we shall not subvert the Act by upholding precipitate grants of summary judgment to defendants.

REVERSED.