19 F.3d 21
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Louis ANDRIAKOS, Plaintiff-Appellant,
v.
UNIVERSITY OF SOUTHERN INDIANA, et al., Defendants-Appellees.
 No. 92-3600.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 26, 1994.*
Decided Feb. 17, 1994.
 
 Before ESCHBACH, RIPPLE and MANION, Circuit Judges.
 
 ORDER
 
 1
 Louis Andriakos, a former nursing student at the University of Southern Indiana School of Nursing ("USI," or the "School of Nursing"), challenges his dismissal from the nursing school on the grounds that he was deprived of a property interest in educational benefits without due process of law in violation of the Fourteenth Amendment, and that he was discriminated against on the basis of sex in violation of Title IX, 20 U.S.C. Sec. 1681(a). Mr. Andriakos also challenges the district court's reliance on the McDonnell Douglas burden-shifting method of proof in evaluating his Title IX claim. We affirm.
 
 
 2
 Louis Andriakos was a student at the USI School of Nursing from August 1988 to March 1991. During the spring term of the academic year 1989-1990, Mr. Andriakos enrolled in Nursing N242, Health Patterns of Children ("Nursing N242"). Gail Franks, R.N., his instructor for the clinical component of the course, observed several instances of unprofessional conduct and unsafe nursing practices during Mr. Andriakos's clinical rotation. For example, Mr. Andriakos made medically significant errors in determining proper dosages of medication, and relied on scientifically unsound information to prepare a treatment plan. Mr. Andriakos also made an independent decision not to administer medication to a patient, and failed to advise Ms. Franks or the patient's nurse of that decision. On April 10, 1990, Ms. Franks provided Mr. Andriakos with a midterm evaluation of his performance, notifying Mr. Andriakos that he had failed to meet the minimal standards of performance in the course. On May 5, 1990, Mr. Andriakos met with Ms. Franks and Pediatrics Clinical Coordinator Melissa Vandeveer, R.N., who informed him that he would receive a failing grade in Nursing N242. Mr. Andriakos was then dismissed from the USI nursing program pursuant to the Nursing School's policy that an academic failure due to unsatisfactory performance in the clinical component of a course warrants dismissal from the program.
 
 
 3
 In mid-May, 1990, Mr. Andriakos met with Nadine Coudret, R.N., Dean of the USI School of Nursing, and asked permission to continue in the nursing program and to re-enroll in Nursing N242. On May 23, 1990, with Ms. Franks and Ms. Vandeveer present, the faculty considered and approved Mr. Andriakos's request. Mr. Andriakos re-enrolled in Nursing N242 in the spring term of the academic year 1990-1991 with a new clinical instructor, Margaret Graul, R.N. During Mr. Andriakos's clinical rotation, Ms. Graul observed unsafe practices, including a failure to identify the proper location for an injection and to provide accurate nursing diagnoses of patients under his care. During the second week of clinical instruction, Ms. Graul notified Mr. Andriakos that he had not demonstrated an adequate grasp of the scientific principles needed for safe clinical practice. Ms. Graul also asked Mr. Andriakos to submit weekly written evaluations of his own performance, and commented on his progress. Mr. Andriakos ultimately received a failing grade in the course.
 
 
 4
 In late June, 1991, Mr. Andriakos filed a formal written grievance with the Student Academic Grievance Committee, alleging that the grades he had received from Ms. Franks and Ms. Graul were unfair. The Committee met on three occasions to consider Mr. Andriakos's claim, but did not grant Mr. Andriakos's request for a hearing. On August 22, 1991, the Committee submitted its report to Robert L. Reid, Vice President of Academic Affairs, in which it concluded that the failing grades were warranted, and that Mr. Andriakos had received adequate warning from both instructors of the need to ameliorate his performance. The Committee's decision led to Mr. Andriakos's final dismissal from the School of Nursing.
 
 
 5
 Mr. Andriakos thereafter filed this lawsuit, naming as defendants the University of Southern Indiana, the Board of Trustees of the University of Southern Indiana, Ms. Franks, Ms. Graul and Mr. Reid. In his complaint he alleged that he had been deprived of a property interest without due process of law and denied equal protection of the law, all in violation of the Fourteenth Amendment and 42 U.S.C. Sec. 1983, and that he had been discriminated against on the basis of his sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. Secs. 1681-1688. The district court dismissed Mr. Andriakos's constitutional claims as being subsumed under his Title IX claim, and granted the defendants' motion for summary judgment on the Title IX claim. Mr. Andriakos timely appealed.
 
 
 6
 Mr. Andriakos contends that the defendants' refusal to grant him a hearing before the Student Academic Grievance Committee deprived him of a constitutionally protected property interest without due process. The Supreme Court's decision in Board of Curators v. Horowitz, 435 U.S. 78 (1978), forecloses this claim. In Horowitz, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require a hearing before a student may be dismissed for academic deficiencies. 435 U.S. at 89-90. The Supreme Court further held that where a student has been "fully informed ... of the faculty's dissatisfaction" with his academic performance, and of "the danger this posed to timely graduation and continued enrollment," and where the faculty's decision to dismiss the student "was careful and deliberate," the student has been accorded all the process to which he is entitled under the Fourteenth Amendment. Id. at 85. As in Horowitz, Mr. Andriakos was informed of his instructors' evaluation of his performance in the clinical component of Nursing N242, and was advised that failure to improve would jeopardize his continued enrollment. Mr. Andriakos pursued both formal and informal grievance procedures, which included meetings with his instructors and with Dean Coudret. See id. at 84-85. Dismissal of Mr. Andriakos's due process claim was therefore warranted.
 
 
 7
 Mr. Andriakos also challenges the entry of summary judgment on his Title IX claim. Under Section 901(a) of Title IX of the Education Amendments of 1972 (codified at 20 U.S.C. Sec. 1681(a)), the USI School of Nursing, as a recipient of federal financial assistance, is prohibited from intentionally discriminating against any student on the basis of sex.[2] See Franklin v. Gwinnett County Public Schools, 112 S.Ct. 1028, 1037 (1992); Cannon v. University of Chicago, 441 U.S. 677, 680-82, 709 (1979). Thus, the ultimate issue in this case is whether the defendants dismissed Mr. Andriakos from the USI School of Nursing because of sex discrimination. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2753-54 (1993) (Title VII case); Pfeiffer v. School Bd. for Marion Center Area, 917 F.2d 779, 783-84 (3d Cir.1990) (Title IX case). Although the parties characterize their dispute as one concerning the elements of a prima facie case under Title IX, their disagreement involves the proper "modes and orders of proof" of Mr. Andriakos's claim of intentional discrimination. Hicks, 113 S.Ct. at 2751; see also Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 569-70 (7th Cir.1989). The defendants support the district court's application of a modified version of the McDonnell Douglas indirect method of proving intentional discrimination,[3] adapted to Title IX's prohibition of sex discrimination in an academic setting, while Mr. Andriakos contends that McDonnell Douglas is only applicable to cases of employment discrimination governed by Title VII and similar statutes. Whether Mr. Andriakos takes this position because he believes that he has brought forward sufficient direct evidence of intentional discrimination to create a triable issue is unclear; in any event, we conclude that Mr. Andriakos has not established a prima facie case of sex discrimination using either a direct or an indirect method of proof.
 
 
 8
 In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a Title VII race discrimination case, the Supreme Court held that, where an employer denies that it has unlawfully discriminated against a plaintiff, and instead asserts that its adverse action against the plaintiff was based on legitimate considerations, the plaintiff may establish a prima facie case by an indirect method of proof. Id. at 801-04. The general paradigm of indirect proof requires the plaintiff to show that (1) he belongs to a class protected by the statute; (2) his qualifications or performance were sufficient to meet the defendant's legitimate expectations; (3) he received adverse treatment; and (4) other persons with the same qualifications or level of performance did not suffer such adverse treatment. See id. at 802 & nn. 13-14. Once the plaintiff makes this showing, the burden of producing evidence shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for its adverse action. Id.; see Hicks, 113 S.Ct. at 2747; Shager v. Upjohn Co., 913 F.2d 398, 400-01 (7th Cir.1990). If the defendant meets this burden, the presumption of illegal discrimination dissolves, and the issue becomes whether the defendant's proffered reason for its action is a mere pretext for discrimination. See Hicks, 113 S.Ct. at 2747-48. If the plaintiff then produces sufficient "evidence from which a rational factfinder could infer that ... the only reason [the defendant] offers ... is a lie, the inference that the real reason was a forbidden one ... may rationally be drawn." Shager, 913 F.2d at 401, see Hicks, 113 S.Ct. at 2749.
 
 
 9
 In Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir.1988), the First Circuit considered a claim of discriminatory discharge from a medical school residency training program brought under Title IX. Id. at 884. The court held that because the plaintiff was both an employee and a student, the substantive law for proving discriminatory treatment under Title VII should be applied to her Title IX claim. Id. at 896-97. In applying a McDonnell Douglas analysis to the plaintiff's discharge claim, the court noted that this framework "is essentially a method for ferreting out discriminatory animus where direct evidence of intent is lacking." Id. at 899. In Cohen v. Brown University, 991 F.2d 888 (1st Cir.1993), however, the First Circuit held that, except in an employment discrimination context, the "Title VII burden-of-proof rules do not apply in Title IX cases." Id. at 902. Cohen is distinguishable from the present case in several respects. The plaintiffs in Cohen claimed that Brown University had violated Title IX by eliminating two women's sports programs from its intercollegiate varsity athletic program. Id. at 892. The plaintiffs thus alleged a violation of 20 U.S.C. Sec. 1681(b), rather than Sec. 1681(a). As the First Circuit pointed out in Cohen, Sec. 1681(b) and the accompanying regulations provide a comprehensive framework for establishing the plaintiffs' prima facie case, obviating the need to look to employment discrimination law for guidance. Id. at 901-02. In contrast, the regulations applicable to Mr. Andriakos's Sec. 1681(a) claim generally provide that a person may not be subjected to different requirements in an academic program on the basis of sex, but do not address the question of how a claimant may prove that unlawful discrimination has occurred. See 34 C.F.R. Sec. 106.31(a)-(b). A claim that an individual student participating in a clinical training program open to both men and women has been subjected to discriminatory academic evaluation is more closely analogous to the plaintiff's claim in Lipsett than it is to the claim in Cohen, that an educational institution has violated Title IX by curtailing women's access to athletic opportunities or other programs. We are thus more persuaded by the First Circuit's reasoning in Lipsett than by its categoric refusal in Cohen to extend McDonnell Douglas to Title IX claims.
 
 
 10
 Because Title IX and Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 790 et seq., were modeled after Title VI of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000d et seq.,[4] the case law developed under both Title VI and the Rehabilitation Act provides guidance in determining whether McDonnell Douglas should be applied to a Title IX claim.[5] In Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511 (2d Cir.1991), cert. denied, 113 S.Ct. 54 (1992), a Sec. 504 case, the Second Circuit held that where an employer asserts that its adverse action against a handicapped employee was motivated by legitimate reasons unrelated to the handicap, a McDonnell Douglas analysis is appropriate. See id. at 514 (citations omitted); see also Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir.1990) (same), cert. denied, 111 S.Ct. 2825 (1991). In Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir.1987), where a black female physician challenged her dismissal from a fellowship program at a university hospital under Title VI and Title VII, the Third Circuit used a McDonnell Douglas analysis to evaluate both claims. See id. at 440-41. These courts have justified their application of the McDonnell Douglas method of indirect proof outside a Title VII context by observing that direct evidence of discriminatory motive is usually difficult to obtain, see Hankins, 829 F.2d at 440, and that the McDonnell Douglas method is well-suited to determining a defendant's true motives in cases where the defendant has disavowed any reliance on discriminatory reasons for its actions, see Teahan, 951 F.2d at 514; Smith, 914 F.2d at 1339. The same reasons support applying McDonnell Douglas to a Title IX case where a student alleges that intentional sex discrimination motivated his dismissal and the educational institution advances a nondiscriminatory reason to justify the dismissal. The district court was therefore correct in relying on McDonnell Douglas and requiring Mr. Andriakos to prove as part of his prima facie case that his academic performance met his instructors' legitimate expectations.
 
 
 11
 To establish his prima facie case, Mr. Andriakos relies on his deposition in which he states that he disputes his instructors' evaluations of his academic performance, that female nursing students received more favorable treatment than male students, and that Ms. Franks made a derogatory remark concerning the inability of men to make good nurses. He also points to the affidavit of a former student, Sally Moffatt, R.N., in which Ms. Moffatt states that Ms. Franks' treatment of Mr. Andriakos "was so markedly different from her treatment of the other students that Franks gave her the impression that [she] had decided early in the semester to fail Andriakos." (R. at 14, Aff. of Sally Moffatt.) The evidence provided by Mr. Andriakos does not constitute direct evidence of intentional discrimination, see, e.g., Randle, 876 F.2d at 569-70 (collecting cases), thus leaving the district court with little choice but to adopt the McDonnell Douglas framework for analyzing his claim. See id.
 
 
 12
 Mr. Andriakos's contention that this evidence is sufficient to establish a prima facie case of intentional discrimination in violation of Title IX is without merit. Mr. Andriakos brought forward no evidence concerning his academic performance at USI, apart from his own opinion that he wrongly received failing grades in Nursing N242. In light of the great deference accorded to university instructors in evaluating a student's performance, this evidence is immaterial. See Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 & n. 11 (1985). Mr. Andriakos's deposition testimony that women students were generally treated better than men is of limited relevance to the issue of whether Mr. Andriakos himself was discriminated against because of his sex. See Gilty v. Village of Oak Park, 919 F.2d 1247, 1252 (7th Cir.1990). Ms. Moffatt's affidavit does not assist Mr. Andriakos in this respect, because it only provides evidence that Mr. Andriakos was treated differently from the other students in class, not that the disparate treatment was due to his sex. The affidavit also provides no evidence as to whether Mr. Andriakos's second instructor, Ms. Graul, treated him unfairly. Finally, evidence of a derogatory remark concerning the ability of men to become nurses, although probative of sex discrimination, cannot serve to fill the gaps in Mr. Andriakos's prima facie case. See Hong v. Children's Memorial Hosp., 993 F.2d 1257, 1265-66 (7th Cir.1993); Shager, 913 F.2d at 402.
 
 
 13
 Mr. Andriakos contends that in granting summary judgment to the defendants, the district court made an impermissible credibility determination. Mr. Andriakos misconstrues the district court's decision. The court stated that, even assuming that Mr. Andriakos had established a prima facie case of sex discrimination, the evidence was insufficient to create a factual issue concerning whether the defendants' proffered reasons for dismissing Mr. Andriakos from nursing school were pretextual. The district court's conclusion is amply supported by the record. In particular, Mr. Andriakos has failed to meet his burden on summary judgment of bringing forward evidence from which a reasonable factfinder could conclude that his instructors' accounts of his significantly substandard clinical performance were untrue, or that similar lapses on the part of women nursing students were overlooked. See Hong, 993 F.2d at 1264-66; Shager, 913 F.2d at 401-02. Indeed, Mr. Andriakos does not dispute that the alleged incidents of unsafe clinical practice and other unprofessional conduct actually occurred. The defendants were therefore entitled to summary judgment.
 
 
 14
 For the foregoing reasons, the district court's decision is
 
 
 15
 AFFIRMED.
 
 
 
 *
 Pursuant to Plaintiff-Appellant's motion, oral argument in this case was waived, and this appeal was submitted on the briefs and record. See Fed.R.App.P. 34(f); Cir.R. 34(e)
 
 
 [2]
 The statute provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. Sec. 1681(a)
 
 
 [3]
 See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)
 
 
 [4]
 See Cannon, 441 U.S. at 694-96 & n. 16 (Title IX was modeled after Title VI); United States Dep't of Transp. v. Paralyzed Veterans, 477 U.S. 597, 600 & n. 4 (1986) (section 504 of the Rehabilitation Act was modeled after Title VI)
 
 
 [5]
 Cf. Paralyzed Veterans, 477 U.S. at 600 n. 4 ("We have relied on case law interpreting Title VI as generally applicable to later statutes.")