**Ida L. MYRICK, Plaintiff–Appellant,**

v.

**ARAMARK SERVICES, INC., Defendant–Appellee.**

No. 04–2400.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 2004.

Decided Jan. 12, 2005.

Armand L. Andry, Oak Park, IL, for Petitioner–Appellant.

Steven H. Adelman, Lord Bissell & Brook, Chicago, IL, for Respondent–Appellee.

Before KANNE, WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Ida Myrick, who is African American, claims that Aramark Services, Inc., fired her because of her race and recent pregnancy. The district court granted sum-

mary judgment for Aramark and Myrick appeals. We affirm.

## I.

We recount the facts in the light most favorable to Myrick. Aramark hired Myrick in 1995 as a cashier at one of its cafeterias and later promoted her to bookkeeper. For several years the employment relationship was harmonious. In addition to being promoted, Myrick received the highest performance rating in 1997 and 1999, and she encountered no difficulty when she took leave during pregnancies in 1995 and 1997.

The situation changed after Jeff Yore became Myrick's supervisor in December 1999. Myrick came to believe that Yore, who is white, was prejudiced against African Americans. Almost daily Yore made comments with racial overtones. For example, he would say things to her like, "We don't have no collard greens or cornbread, but we have chicken and watermelon," and he would address a black male who entered the cafeteria with, "What's up brother, what's up, you my dog." Yore admitted using "Ebonics" in conversations with both whites and African Americans, a practice he says he adopted while growing up in a suburb of Detroit, Michigan. But he denied making any comment that was "racist."

Myrick became pregnant again in October 2000, and during her pregnancy suffered complications. She went into premature labor on April 22, 2001, and was ordered off work by her doctor the next day. She called Yore from the doctor's office and told him she needed to go on leave. Yore consulted the human resources department about maternity leave and advised Myrick to complete a leave-of-absence form and also have her doctor complete a certification for leave under the Family Medical Leave Act (FMLA), 29

U.S.C. §§ 2601–54. Myrick completed the leave-of-absence form and returned it with a "disability certificate" from her doctor confirming that she "was totally incapacitated from 4/23/01 to indefinite." The doctor later faxed to Yore the requested FMLA certification.

On June 2, 2001, Myrick delivered her baby by caesarean section and was told by her doctor to wait 10 to 12 more weeks before returning to work. She communicated this information to Yore by voice mail on June 2 and spoke with him directly by telephone on June 4. Then in late June or early July she left him another message stating that she was still on bed rest.

This time period is the focus of Myrick's suit. She insists that she implicitly asked for an extension of leave—which would take it beyond the 12 weeks of her entitlement under the FMLA—when she told Yore on June 4 she could not return for another 10 to 12 weeks. Yore did not advise her that an explicit request for extended leave was necessary or that her job was in jeopardy if she remained out. But according to Aramark, Myrick "never specifically asked to extend her leave of absence beyond 12 weeks," and the company points to her admission that she had read its employee handbook, which provides that employees returning to work "from a family leave of absence within or on the first scheduled day following the expiration of the 12 weeks are entitled to return to their job or an equivalent position without loss of benefit or pay."

In late July 2001, Yore contacted the human resources department to determine whether he could "make a commitment" to Carmen Cervantes, the employee covering Myrick's duties while she was on leave. It is undisputed that Yore "wanted to solidify the bookkeeping position and remove the uncertainty that surrounded Carmen Cer-

vantes' role." Kate Maney, the regional Human Resources Director, verified that Myrick had already been on leave for more than the 12 weeks guaranteed her under the FMLA, and told Yore he could offer the job to Cervantes.

Aramark never formally communicated to Myrick that her FMLA leave had been approved, or that she was being permanently replaced by Cervantes. Myrick learned that she had been terminated after she tried to contact Yore on August 8, 2001, to announce that she was ready to return to work. The new general manager for that location told Myrick that Yore was on vacation and advised her to contact human resources. When she did, a human resources employee told Myrick that her position was no longer available because she had not returned immediately after her FMLA leave expired. According to Maney, Myrick was "considered terminated as of July 13, 2001."

Myrick brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e–17, and 42 U.S.C. § 1981. Aramark moved for summary judgment. As relevant here, the company argued that Myrick could not establish a prima facie case of race or pregnancy discrimination because she did not return to work after her FMLA leave expired and had no entitlement to additional leave, and because she was not treated less favorably than any similarly situated employee. Moreover, as to Myrick's claim of race discrimination, Aramark argued that the decisionmaker—Maney, rather than Yore, according to Aramark—was unaware of Myrick's race when she was terminated.

In opposing Aramark's motion, Myrick argued that her "stellar reviews," regular promotions, and salary increases showed that she had been doing her job well enough to meet Aramark's legitimate expectations, and that she, like all the com-

pany's employees, was potentially entitled to an unpaid leave of absence for up to one year. She admitted that Aramark's employee handbook provides that such extended leaves must be taken "without guarantee of position or pay," but also pointed to the immediately following language in the handbook: "However, a position should be held for an employee as long as possible without causing undue hardship on the component. Examples of an unprotected leave include childcare, educational pursuits and any leave extended past the 12 weeks covered by FMLA." Myrick contended that two male employees, Hector Villa and Oscar Serna, had returned to their jobs under this policy after taking more than 12 weeks of leave. In addition, she argued that Aramark's stated reason for firing her was pretextual because, she said, the company had changed its explanation during the course of the administrative and judicial proceedings from one "based on Plaintiff not contacting her manager" to one asserting "that Maney decided to fire Plaintiff." Moreover, according to Myrick, the decisionmaker was Yore and not Maney.

In granting summary judgment, the district court first concluded that Myrick was proceeding only under the indirect method of proving discrimination. The court then held that Myrick had failed to establish that she was meeting Aramark's legitimate expectations when she was fired or that Villa and Serna were similarly situated or had received more favorable treatment. The court noted that in any event Myrick could not prove that Aramark's articulated reason for firing her was pretextual. The court agreed with Aramark that the evidence showed Maney had made the termination decision independently of Yore, and the court also rejected Myrick's contention that Aramark's reasons for the termination were inconsistent.

## II.

We apply the same standard in assessing liability under Title VII and § 1981. *See Bennett v. Roberts,* 295 F.3d 687, 697 (7th Cir.2002). And we apply the same test in analyzing claims of discriminatory discharge on the basis of race and pregnancy. *See Little v. Ill. Dep't of Revenue,* 369 F.3d 1007, 1011 (7th Cir.2004) (race); *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1002 (7th Cir.2001) (pregnancy). Our review is *de novo. Adams v. Wal–Mart Stores, Inc.,* 324 F.3d 935, 938 (7th Cir. 2003).

Because Myrick fails to contest the district court's conclusion that she did not set forth proof under the direct method in presenting her claims of race and pregnancy discrimination, we analyze her arguments under the indirect method. Under this method a plaintiff must establish that she was a member of a protected class, that she suffered an adverse employment action, that she was performing satisfactorily, and that at least one similarly situated person outside her protected class was treated more favorably. *Little,* 369 F.3d at 1011. If the plaintiff is able to satisfy all four elements of this prima facie case, the burden of production shifts to the employer to identify a nondiscriminatory reason for the action taken. *Id.* If the employer articulates such a reason, the plaintiff will avoid summary judgment only if she can produce evidence that the reason given is pretextual. *Id.* On appeal Myrick challenges the district court's conclusion that she failed to satisfy the third and fourth elements of her prima facie case, and that she failed to adduce evidence of pretext.

■ Myrick first argues that the district court erred in concluding that she was not meeting Aramark's performance expectations. We disagree. Myrick points to evidence of her promotion to bookkeeper, positive reviews, and salary increases, but evidence of a good performance in the past has little relevance here if, as Aramark asserts, the failure on her part was not returning to work after her FMLA leave expired. *See Grayson v. O'Neill,* 308 F.3d 808, 818 (7th Cir.2002). And Myrick has never contended that Aramark's policy of holding open the job of an employee on unprotected leave "as long as possible without causing undue hardship on the component," together with Yore's responses to her June telephone calls, is evidence that taking leave beyond 12 weeks was not inconsistent with Aramark's legitimate expectations. *See Gordon v. United Airlines, Inc.,* 246 F.3d 878, 887 (7th Cir.2001) (defining legitimate expectations for purposes of this test not in terms of desirable behavior but of whether the employee "had deviated at all from permissible patterns of behavior").

■ Regardless, Myrick gives us no reason to reject the district court's conclusion that she was not similarly situated to Villa and Serna, the other employees who were permitted to return to work after taking extended leave. Myrick believes that it is enough that all three were hourly employees covered by the same rules for leaves of absence. But "similarly situated" means "directly comparable ... in all material respects." *Grayson,* 308 F.3d at 819. Being subject to like standards is one of the qualifying conditions, but a plaintiff normally must show also that the other individuals "dealt with the same supervisor ... and had engaged in similar conduct." *McDonald v. Vill. of Winnetka,* 371 F.3d 992, 1002 (7th Cir.2004). Here the district court was correct to distinguish the positions held by Serna (one of five cashiers) and Villa (one of ten kitchen workers) from that occupied by Myrick. Serna and Villa held "entry-level" jobs in areas with multiple positions and greater

turnover, and Myrick's evidence established only that spots were open and available for them when they asked to return from leave. The same was not true with respect to Myrick and the single bookkeeper position she held when she went on leave. Moreover, as Aramark notes, Serna and Villa took extended leave under a different supervisor.

■ Ultimately, though, the prima facie case does not matter unless the district court erred in concluding that Aramark proffered a legitimate, nondiscriminatory reason for firing Myrick, and that Myrick offered insufficient evidence to demonstrate a genuine issue of fact as to the truthfulness of the reason given. Myrick does not argue that the reasons given for her discharge were not satisfactory if true. (In the administrative proceedings Maney explained that Myrick was terminated because she had not returned, or contacted her manager to make arrangements to return, when her leave ended; Yore in his affidavit offered the additional explanation that he believed it was important to "solidify" the bookkeeping position by having it occupied by a permanent employee, and so he decided to make Myrick's replacement permanent when Myrick did not return after the end of her FMLA leave.)

On the issue of pretext, Myrick is correct to the extent she argues that the district court erred in concluding that Maney, the regional Human Resources Director, was the decisionmaker. Aramark's own evidence was that Maney did nothing more than ascertain that the FMLA presented no obstacle to firing Myrick when Yore inquired whether he could make Cervantes permanent. Maney had no occasion even to consider Myrick's employment status until Yore contacted her about replacing Myrick, and even then the extent of her involvement with the decision was to verify that Myrick's 12 weeks had run.

There is no evidence that Aramark had a policy of automatically terminating employees who did not return to work immediately upon the conclusion of a FMLA leave, nor is there any suggestion that Maney considered the requirements of the bookkeeper position, the relative qualifications of Myrick and Cervantes, or any other factor before authorizing Yore to replace Myrick. Maney thus did not perform an "independent review" of the termination decision but rather rubber-stamped it in a way we have said does not insulate the true decisionmaker. *See Shager v. Upjohn Co.*, 913 F.2d 398, 404–05 (7th Cir.1990) (characterizing district manager as true decisionmaker despite approval for termination from "Career Path Committee," since such a committee, "even if it is not just a liability shield invented by lawyers, is apt to defer to the judgment of the man on the spot"). Our more recent decisions have clarified that the decisionmaker need not be "a mere cat's paw" of the one whose influence is to be imputed. *See, e.g., Lust v. Sealy, Inc.*, 383 F.3d 580, 584 (7th Cir.2004) (holding that where decisionmaker would not have turned down plaintiff for promotion but for recommendation of her supervisor, the supervisor's sexism was cause of plaintiff's injury); *Little*, 369 F.3d at 1015 ("Even someone who merely recommends a termination is considered a decisionmaker for purposes of assessing pretext when he was the one functionally, if not formally, responsible for the decision.").

Still, we do not understand how it helps Myrick to label Yore as the decisionmaker. Myrick views the identity of the decisionmaker as significant because taking Maney out of the equation eliminates Aramark's defense that it could not have engaged in racial discrimination if Maney did not know Myrick's race when she told Yore he could make Cervantes permanent. Identi-

fying Yore as the decisionmaker, Myrick assumes, also makes her evidence of Yore's racial attitudes relevant. But such evidence will not raise an inference of pretext unless Myrick can raise an inference that racism was the real reason for the decision, and she never linked Yore's termination decision to his alleged "animosity." *See Adams,* 324 F.3d at 939 (holding that evidence that decisionmaker "was personally disinclined to give African–Americans the benefit of the doubt" was not sufficient to create genuine issue of material fact where bias was not linked to termination decision). More importantly, though, at summary judgment Myrick did not dispute Aramark's evidence that Yore decided to make Cervantes permanent because he "wanted to solidify the bookkeeping position and remove the uncertainty that surrounded" her role, and effectively, then, she conceded away her discrimination claims.

Myrick also argues that the reason Yore offered conflicts with what Maney reported to the EEOC, but there is no inconsistency. Yore stated that he wanted a permanent bookkeeper and thought "the lack of job security" had "impacted" Cervantes' performance, but he could not offer Cervantes the position unless Myrick had exhausted her FMLA leave and was no longer guaranteed that her job would remain open. Thus, as Maney said, Myrick was terminated because her 12 weeks had run and she had not notified the company that she was ready to return.

For all of the above reasons, the district court's decision is AFFIRMED