*408 KAREN NELSON MOORE, Circuit Judge,
dissenting.
The majority holds that Rock-Tenn provided a legitimate, non-discriminatory reason for its termination of Kenneth Clack— insubordination — which Clack did not show to be pretextual. Specifically, the majority concludes that the racial animus of Clack’s direct supervisor, Bill Murphy, who reported the incident in question, should not be imputed to the upper-level manager who made the ultimate termination decision because that decision was based on management’s independent investigation into the incident. I believe that this investigation was insufficient to sterilize the termination decision from the taint of Murphy’s racial animus because it failed to consider what role Murphy’s racial animus may have played in the incident. Accordingly, I respectfully dissent.
“[W]hen a plaintiff challenges his termination as motivated by a supervisor’s discriminatory animus, he must offer evidence of a ‘causal nexus’ between the ultimate decisionmaker’s decision to terminate the plaintiff and the supervisor’s discriminatory animus.” Madden v. Chattanooga City Wide Serv. Dep’t, 549 F.3d 666, 677 (6th Cir.2008). If the plaintiff can show that “the supervisor’s racial animus was the cause of the termination or somehow influenced the ultimate decisionmaker,” such that the ultimate decision maker “ ‘acted as the conduit of [the supervisor’s] prejudice— his cat’s paw — the innocence of [the ultimate decisionmaker] would not spare the company from liability.’ ” Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 877 (6th Cir.2001) (quoting Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990)).
The majority contends that the investigation conducted by Rock-Tenn management was sufficient to break the causal chain between Murphy’s racial animus and the ultimate decision by Rock-Tenn’s general manager, Walter Lancaster, to terminate Clack. Although the record indicates that Lancaster based his termination decision on that investigation, an independent investigation is not always sufficient to absolve an employer of Title VII liability. In Wilson v. Stroh Companies, 952 F.2d 942, 946 (6th Cir.1992), we held that a direct supervisor’s racial animus could not be imputed to the ultimate decisionmakers when the termination decision was based on an independent investigation, coupled with a lack of evidence that the supervisor had failed to report similar misconduct by white employees and a lack of evidence that the ultimate decisionmakers had relied on a false record created by the supervisor. By contrast, in Madden we held that the racial animus of a supervisor could be imputed to the ultimate decisionmakers, notwithstanding the fact of an independent investigation, when there was evidence that the supervisor did not report similar misconduct by white employees. 549 F.3d at 677-79. Thus, although the fact of an independent investigation is an important factor, it is not always sufficient to break the causal chain between a supervisor’s racial animus and the ultimate decision-maker’s decision to terminate the employee.
I do not believe that the investigation conducted here was sufficient to sterilize the termination from the taint of Murphy’s racial animus. The investigation consisted of (1) an initial meeting of the plant superintendent, Mike McDougal, with Clack and union representatives, and (2) a follow-up meeting of Lancaster with Clack, Murphy, and various superintendents and union representatives. Although McDougal and Lancaster gave Clack an opportunity to present his version of the events surrounding his alleged insubordination, nothing in *409 the record suggests that McDougal or Lancaster investigated the possible role that Murphy’s discriminatory animus may have played in the incident. Given Clack’s contention that he was essentially framed or set up by Murphy and the inference that McDougal and Lancaster knew of Murphy’s racial animus, I believe that the investigation conducted here was severely deficient.
Taking the facts in the light most favorable to Clack and drawing reasonable inferences in his favor, we must assume that McDougal and Lancaster knew about Murphy’s racist remarks, his discriminatory treatment of African-American employees, and his hostility toward Clack in particular. The affidavit of Ted Bonine, a former foreman at Rock-Tenn who worked with Murphy between 1999 and 2002, detailed a series of racist remarks by Murphy, some of which were specifically directed at Clack. Bonine stated that he had “complained to management about Murphy but to my knowledge nothing was done about it.” J.A. at 367 (Bonine Aff. at 2). Bonine further stated that “[i]t was my observation, experience and belief that Murphy’s general attitude and feelings were known throughout the facility.” Id.
Because we must assume that McDougal and Lancaster had knowledge of Murphy’s racial animus, they had reason to suspect that Murphy’s racist motives could have played a role in the incident for which Clack was fired. At the very least, they had reason to suspect that there were additional relevant facts surrounding the incident beyond Clack’s allegedly insubordinate conduct. However, the investigation conducted by McDougal and Lancaster did nothing to probe what role Murphy’s racial animus might have played in the events in question. Instead, they conducted an investigation with blinders on, narrowly focused on the details of Clack’s conduct. During the meeting of McDougal with Clack and union representatives on February 2, 2005, for instance, McDougal never inquired into what role, if any, Murphy’s racial animus may have played in the incident. See J.A. at 133-63 (Meeting Tr.). Not surprisingly given the limited focus of the investigation, Lancaster’s explanation of his decision to terminate Clack had a similarly narrow focus on Clack’s alleged misconduct, without any discussion of the potential role of Murphy’s racism. As Lancaster stated at his deposition, Clack “was directed to do a cleanup job and he refused to do it.... I saw that as a violation of our general regulations and discharged him.” J.A. at 464 (Lancaster Tr. at 72).
Of course, an independent investigation could have absolved Rock-Tenn of Title VII liability. When faced with the conflicting stories of two employees, “there is probably no practical step an employer can take beyond independently investigating the misconduct charges that will reduce the chances of an employee’s racism influencing its behavior.” Brewer v. Bd. of Trs. of Univ. of Ill., 479 F.3d 908, 920 (7th Cir.), cert. denied, — U.S. -, 128 S.Ct. 357, 169 L.Ed.2d 36 (2007). However, I believe that the type of narrowly focused investigation conducted here is insufficient in this context. When an ultimate decisionmaker has knowledge of a supervisor’s racial animus and that supervisor reports an employee in the protected class leading to his termination, management’s investigation should not focus only on the employee’s alleged misconduct. Instead, management should broaden the scope of the investigation to consider what role, if any, the supervisor’s racial animus may have played in the events in question. I believe that this approach effectively balances competing concerns. On the one hand, it takes seriously the allegations of employees such as Clack who say they were framed for *410 misconduct by racist coworkers or supervisors. At the same time, it is not too demanding of employers, requiring only that they conduct a meaningful and fair-minded investigation that at least considers the possibility that the known discriminatory animus of the supervisor played a role in the disputed events.
Because the investigation by Rock-Tenn management failed to investigate or consider whether Murphy’s racial animus played a role in the incident in question, I believe that it was insufficient to sterilize Lancaster’s decision to terminate Clack from the taint of Murphy’s discriminatory animus. Accordingly, I believe that Clack sufficiently showed that the preferred reason for his termination was pretextual and that his case should have been submitted to a jury. For the foregoing reasons, I would reverse the district court’s grant of summary judgment in favor of Rock-Tenn on the discrimination claim and therefore respectfully dissent.