James J. CONN, Plaintiff–Appellant,

v.

GATX TERMINALS CORPORATION and Local Union No. 7–507, Oil, Chemical and Atomic Workers International Union, Defendants–Appellees.

No. 93–2550.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1994.

Decided March 7, 1994.

Gregory A. Stayart (argued), Chicago, IL, for James J. Conn.

James W. Gladden, Jr., Barry A. White, Jeffrey S. Fowler (argued), Mayer, Brown & Platt, Chicago, IL, for GATX Terminals Corp.

Gilbert Feldman (argued), Cornfield & Feldman, Chicago, IL, for Local Union No. 7–507, Oil, Chemical and Atomic Workers Intern. Union.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

POSNER, Chief Judge.

The Federal Rules of Civil Procedure require that the complaint contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and illustrate with complaints of half a page or less. Fed.R.Civ.P.App. Forms 3–18. James Conn's counsel filed a complaint that is 20 pages long and contains 120 separate paragraphs, plus a number of documents appended as exhibits. The detail of the complaint enabled the district judge to dismiss the suit on motion under Rule 12(b)(6) (failure to state a claim) filed by the defendants, thwarting what might, for all we know, have been a fruitful program of pretrial discovery for the plaintiff. The plaintiff pleaded himself out of court. *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993); *Fryman v. United States*, 901 F.2d 79, 82 (7th Cir.1990); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 724 (7th Cir. 1986).

Conn was employed at a terminal and tank storage facility owned by GATX Terminals Corporation. He worked in an area called the "Eastman facility," where bulk liquids · owned by the Tennessee Eastman Company were stored. One day his foreman gave him a written work order to load a tank trunk with propylene glycol. The order was not a GATX form, did not contain the customer's name, and had not been date- and time-stamped at the GATX dispatch office. Shortly after the order was given to Conn, a tank truck appeared in his work area. Conn did not recognize the driver or the truck company, and he saw that the driver had failed to stop at the GATX dispatch office to check in. Suspecting mischief afoot, Conn called a GATX dispatcher, Weiss, to check on the order. Weiss told him that he had been told "not to look out the window." Conn loaded the tank truck and noticed that on the way out the driver again failed to stop at the dispatch office as he should have done. In fact (according to the complaint, which with its exhibits is our only source of facts), Conn had just witnessed the theft of 2,500 to 3,000 gallons of propylene.

About a week later, a supervisor, Bigeck—who, according to the complaint, was involved in the theft—told Conn that Conn was being transferred from the Eastman facility to another work area in the terminal. Conn saw this as a demotion and on his way out stopped by the dispatch office and told Weiss, "Darryl, if I find out that you're responsible for getting me thrown out of Eastman, I'm going to have your ass." Conn claims to have meant by this that he had not been to blame for the theft and Weiss would have to take responsibility for his own involvement in it.

The following day, Conn told Garvin, the chief union steward, about the theft. Garvin reacted by saying, "Just let it go. Let it happen." The next day, the manager of the Eastman facility questioned Conn about the "have your ass" statement to Weiss. Conn explained what he had meant and suggested that the manager investigate the theft. Several days later the company fired Conn, primarily for having threatened Weiss. Garvin prepared a written grievance on Conn's behalf. The grievance was rejected by the company. The next stage of the grievance procedure established by the collective bargaining agreement between GATX and the union (a local of the Oil, Chemical and Atomic Workers International Union) is arbitration. Conn asked the local's executive board to take his grievance to arbitration. Garvin was present at the meeting of the board at which Conn made his pitch, but far from supporting Conn told the board, "If it were up to me, I would have fired you [Conn] two years ago!" This was an allusion to Conn's extensive disciplinary record, documented in one of the exhibits to the complaint. The board voted not to take Conn's case to arbitration. The company never disciplined Bigeck or Weiss for their parts in the theft.

Conn claims that GATX fired him in violation of the collective bargaining agreement (a claim actionable under section 301 of the Taft–Hartley Act, 29 U.S.C. § 185) and that the union violated its duty toward him of fair representation, a duty founded on interpretation of the National Labor Relations Act. *Breininger v. Sheet Metal Workers*, 493 U.S. 67, 83–84, 110 S.Ct. 424, 434–35, 107 L.Ed.2d 388 (1989). The claims are entwined. Unless the union violated its duty of fair representation, Conn cannot litigate his

claim of breach of contract, because the union's responsibilities as the exclusive representative of the members of the bargaining unit include responsibility for the decision whether to prosecute a grievance on the employee's behalf. *Brazinski v. Amoco Petroleum Additives Corp.*, 6 F.3d 1176, 1179 (7th Cir.1993). And unless there was a violation of the collective bargaining agreement, a violation of the duty of fair representation could not have harmed Conn. He would not have had a good claim for the union to prosecute on his behalf; the violation of the duty of fair representation would have been harmless. *White v. General Motors Corp.*, 1 F.3d 593, 595 (7th Cir.1993); *Souter v. United Auto Workers*, 993 F.2d 595, 598–99 (7th Cir.1993); *Blount v. Local Union 25*, 984 F.2d 244, 248 n. 6 (8th Cir.1993); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559–60 (6th Cir. 1990).

It is unlikely that the collective bargaining agreement was violated. Collective bargaining agreements invariably allow the employer to fire an employee for cause, and threatening a fellow employee and being complicit in a theft on the employer's premises are examples of proper cause for firing an employee. Conn threatened Weiss, and he participated in the theft of the propylene. He may not have been *positive* at the time that it was a theft, but he thought it was. And yet he not only participated in it; he failed to communicate his suspicions to management until he was demoted. But as the collective bargaining agreement is not even in the record, and as it is possible that he was fired not because he furnished good cause for being fired—though he did—but in retaliation for his revealing the theft, we cannot on this bare record exclude the possibility that GATX violated the collective bargaining agreement by firing him. *Why* the company should want to retaliate against an employee for reporting a theft of a bailor's property is mysterious; it seems unlikely that GATX would be complicit in a theft of property belonging to a valued customer (as the complaint describes Tennessee Eastman); but not all supervisors are loyal agents of their principal, so it is conceivable although improbable that the manager of the Eastman facility was in cahoots with the thieves.

■ What is clear, however, and dooms the suit, is that the complaint does not state a claim for breach of the duty of fair representation. We must accept on this record that Garvin acted out of personal animosity to Conn in failing to recommend to the union's executive board that it take Conn's claim to arbitration; and a union's refusal to handle a grievance on the basis of personal animosity, like a refusal or other representational decision based on racial animus, violates the duty of fair representation. *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1248 (7th Cir.1990); *Dober v. Roadway Express, Inc.*, 707 F.2d 292 (7th Cir.1983). But Garvin did not make the decision not to press Conn's grievance to arbitration. The union's executive board made the decision. And there is no suggestion that the board lacked information that Garvin would have laid before it had he been enthusiastically supporting Conn's grievance. Conn appeared before the board in person and told it the same story that Garvin would have told it had he been in Conn's corner.

■ If a supervisor actuated by discriminatory motives recommends that a worker be fired, and the company fires him on nondiscriminatory grounds, it is not guilty of discrimination, because the discriminatory motive of the supervisor made no difference; the causal element that is a required part of every tort case is missing. *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686–87 (7th Cir.1991); cf. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983); *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 658 (7th Cir.1991) (en banc). So here, the board's refusal to take Conn's case to arbitration was based on its own assessment of the case rather than on Garvin's assessment. The complaint with all its detail contains no suggestion that Garvin, for example by withholding information or misrepresenting Conn's disciplinary record, prevented the executive board from exercising a truly independent judgment. Had Garvin contaminated the board's decision-making process, then (again by analogy to the parallel situation in discrimination cases) his failure to represent Conn fairly would be attributed to the union because it would have affected the union's decision. *Shager v. Up-*

*john Co.,* 913 F.2d 398, 405 (7th Cir.1990); *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1155 (7th Cir.1989). But there is no hint of that. And in response to questions from the bench Conn's lawyer made clear that he does not want discovery, to obtain facts beyond those alleged in the complaint. He thinks the complaint contains every fact that he needs to establish his client's entitlement to a judgment against both defendants, so that if the facts alleged in the complaint are conceded he is home free.

■ Buried deep in the complaint is a more plausible theory of breach of the duty of fair representation than the one that Conn's lawyer pressed in his brief and at oral argument. Conn's grievance was presented to the union's executive board for possible referral to arbitration only because the company turned the grievance down at an anterior stage of the grievance procedure established by the collective bargaining agreement. The complaint suggests that the company turned down the grievance because Garvin in presenting it failed to mention the theft. The duty of fair representation is continuous throughout the grievance procedure, *Thomas v. United Parcel Service, Inc.,* 890 F.2d 909, 919 (7th Cir.1989), so that if Garvin's representation of Conn was tainted by personal hostility and may have caused the company to turn down the grievance Conn has a good claim of breach of the duty. But this theory of the union's liability has been waived in this court. The only consequence of Garvin's personal hostility of which Conn complained in his opening brief was the decision of the executive board not to take Conn's grievance to arbitration. The union so characterized Conn's theory of the union's liability and responded accordingly. Conn's reply brief did not take issue with that characterization. To reverse a judgment on the basis of a theory concealed from the appellant's adversary would be inconsistent with the premises of an adversary system of justice. *Hartmann v. Prudential Ins. Co.,* 9 F.3d 1207, 1214–15 (7th Cir.1993).

AFFIRMED.