**Gladys F. WILLIS, Plaintiff-Appellant,**

v.

**MARION COUNTY AUDITOR'S OFFICE, Defendant-Appellee.**

**No. 96–1317.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1996.

Decided July 1, 1997.

---

Kevin Scionti (argued), Kenneth T. Roberts, Roberts & Bishop, Indianapolis, IN, for Plaintiff–Appellant.

James S. Stephenson, John T. Roy (argued), Stephenson, Daly, Morow & Kurnik, Indianapolis, IN, for Defendant–Appellee.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Gladys Willis brought an action in the district court, alleging discrimination in employ-

ment in violation of Title VII of the Civil Rights Act of 1964 and a supplemental state law claim. She also alleged that her discharge had been in retaliation for seeking redress for the alleged discriminatory conduct. The district court dismissed the Title VII discrimination claim and the supplemental state claim on the ground that the applicable statutes of limitation barred relief. Because, on the papers before the court on summary judgment, there appeared to be a genuine issue of triable fact on the retaliation claim, the district court proceeded to trial on that claim. The jury returned a verdict for Ms. Willis. The district court, considering the entire trial record, then determined that the evidence of record would not support the claim. Accordingly, the court granted the defendant's motion for judgment as a matter of law. Ms. Willis now appeals this latter ruling. Because we believe that the district court was correct in concluding that the record will not support the jury's verdict, we affirm its judgment.

I

BACKGROUND

A. *Facts*

Ms. Willis is an African–American woman who worked for the Marion County Auditor's Office as an accounts payable technician until she was discharged on July 31, 1992. In that position, Ms. Willis was responsible for processing invoices for the payment of vendors who supplied services to Marion County. In early February 1992, one of the vendors called the office to complain that its bill, which was supposed to have been processed by Ms. Willis, had not been paid. When asked by her supervisor, Dorothy Conklin, about the invoice, Ms. Willis replied that she did not have the vendor's invoice. When Conklin checked Ms. Willis' files,[1] she discovered that Ms. Willis had not processed the bill and that several other overdue invoices had not been processed. Conklin issued Ms. Willis two written reprimands for this inci-

dent and suspended Ms. Willis for three days.[2] Conklin also placed Ms. Willis on probation for 30 days.

After this incident, Ms. Willis filed a grievance with Conklin's supervisor, Deputy Auditor Shirley Mizen. Ms. Willis challenged the reprimands, alleging that Conklin had discriminated against her based on her race and had planted the overdue invoices in her file. Mizen sent Ms. Willis a memorandum requesting more detail or other information supporting her conclusory allegations, but did not receive any further information. Mizen concurred in the issuance of the reprimands and informed Ms. Willis of her further review options. Ms. Willis then took the grievance to the county's grievance panel. The panel approved disciplinary action but recommended that the two reprimands be consolidated into one and that the suspension therefore be reduced to one day. The Auditor, John von Arx, accepted this recommendation, but extended the probationary period to 60 days.

On March 18, the same vendor again called to complain that several of its invoices had not been paid. Again, Conklin found the missing invoices in Ms. Willis' work area. Because this was the second such incident, Ms. Willis was reprimanded and suspended for three days. She did not file an internal grievance but did file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Indiana Civil Rights Commission. Soon thereafter, Conklin and another supervisor, Lori Hupp, initiated a three-day turnaround policy for invoices: All invoices had to be processed within three days of the technician's receipt of the invoice.

In April, during a spot check for compliance, one invoice was found in Ms. Willis' files that would violate this new policy, and Ms. Willis was given an oral reprimand. No further action was taken. During another spot check of the entire accounts payable staff in July, while Conklin was on vacation, Hupp discovered eight invoices that violated

---

1. Conklin checked everyone's work area for the missing invoices.

2. Ms. Willis' actions violated two county rules: one that required her to check her files when her supervisor so requested and one that required her to process invoices in a timely manner.

the policy in Ms. Willis' files.[3] Mizen convened a meeting at which Ms. Willis was given the opportunity to explain why the unprocessed invoices were found in her files. After the meeting, Mizen concluded that Ms. Willis should be reprimanded for violating Marion County policy, and Hupp issued the reprimand. Because Ms. Willis had received three written reprimands, in a one-year period, for failing to perform her assigned duty, she was discharged pursuant to the office's personnel policy. Ms. Willis then filed a second charge with the EEOC, alleging that Marion County had discharged her in retaliation for filing her original discrimination claim.

### B. District Court Proceedings

Prior to trial, the district court granted summary judgment to Marion County with respect to the claim of racial discrimination and the pendent state claim. Both claims, the district court determined, were time barred. Ms. Willis does not appeal that decision. The court, however, allowed the retaliatory discharge claim to proceed.

At trial, Ms. Willis produced evidence indicating that Conklin and Hupp were biased against African–Americans. These individuals had been overheard making comments to the effect that black employees were less motivated, ambitious and intelligent than white employees, in addition to several other highly inappropriate remarks. Ms. Willis also presented testimony that Conklin frequently would hover around Ms. Willis' desk. The jury returned a verdict in Ms. Willis' favor.

Marion County's attorney filed a post-trial motion for judgment as a matter of law; the district court granted the motion. Noting that it had allowed the case to go to the jury in order to avoid the necessity of retrial in the event of reversal on appeal, the district court held that there was insufficient evidence, even when combined with all inferences reasonably drawn in Ms. Willis' favor, to support a verdict that the supervisor with decisionmaking authority had discharged Ms. Willis to retaliate for Ms. Willis' earlier filing

of a discrimination claim. The court pointed out that neither employee who had been heard making racially derogatory statements was the decisionmaker in Ms. Willis' firing. In contrast to the materials presented at the summary judgment stage, the evidence at trial did not support, the court determined, the conclusion that Deputy Auditor Mizen had harbored any racial animus or had fired Ms. Willis for any reason other than for her tardy processing of invoices. The court also held that the trial record would not support a jury determination that the employer's procedure for discharge had been used as a conduit for Conklin's and Hupp's desire to retaliate against Ms. Willis for her EEOC claim of discrimination. The district court further ruled that, if its judgment as a matter of law were overturned, Marion County would be entitled to a new trial because the jury's verdict was against the clear weight of the evidence.

## II

## DISCUSSION

■ In reviewing a district court's grant of a motion for judgment as a matter of law, we apply the same standard as did the district court. "We must view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed." *Deimer v. Cincinnati Sub–Zero Prods.*, 58 F.3d 341, 343–44 (7th Cir.1995) (internal quotation and citations omitted). A mere scintilla is not enough. *La Montagne v. American Convenience Prods.*, 750 F.2d 1405, 1410 (7th Cir. 1984). Here, the jury found that Marion County discharged Ms. Willis in retaliation for her filing a charge of discrimination with the EEOC. Once the plaintiff prevails before the jury, her method of proof at trial is irrelevant; we simply ask whether the jury's verdict for Ms. Willis could be sustained on the whole record. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 768 (7th Cir.1994); *see*

---

3. Eight such invoices were found in Ms. Willis' files, but Mizen determined that it was possible

that one of these invoices may have been another technician's responsibility.

*Knox v. Indiana,* 93 F.3d 1327, 1334 (7th Cir.1996).

## A.

In considering the motion for judgment as a matter of law, the district court focused initially on whether the individual who had the authority to discharge Ms. Willis acted in retaliation for Ms. Willis' engaging in the protected activity of filing a discrimination claim. The decisionmaker was Mizen, the Deputy Auditor. Mizen was the individual who, after hearing Ms. Willis' explanation as to why there were seven invoices in her file that violated the three-day turnaround policy, informed Ms. Willis that her employment was terminated. Mizen subsequently informed the Auditor that she had terminated Ms. Willis.

Having identified the decisionmaker, the district court proceeded to analyze the evidence with respect to her motivation for discharging Ms. Willis. The court concluded that Ms. Willis had presented no evidence at trial from which a reasonable jury could conclude that Mizen, as opposed to her subordinates, harbored either a desire to terminate Ms. Willis for engaging in protected activity or even a general racial animus. The case had survived summary judgment on the retaliatory discharge claim because of Rebecca Cafouros' affidavit. In her affidavit, Cafouros had stated that she overheard Conklin and Mizen in conversations in which negative remarks had been made about the African–American employees and about Ms. Willis in particular. Cafouros further had averred that, at a meeting following Ms. Willis' filing of the discrimination charge, she heard Mizen and Conklin make comments to each other impugning the intelligence and motivation of the black employees. According to the district court, this affidavit, vague though it was, was sufficient to create a genuine issue of material fact whether Mizen harbored a racial animus that could have led to a retaliatory discharge.

At trial, however, Cafouros' testimony did not allow such an inference. On cross-examination, Marion County's counsel referred to Cafouros' affidavit and asked what comments Mizen had made in these alleged conversa-

tions. In response, Cafouros testified that Mizen had not made any of the comments but that Ms. Willis' immediate supervisor, Conklin, had. Neither Cafouros nor anyone else testified to any comments made by Mizen from which a jury could conclude either that Mizen held a racial bias against Ms. Willis or that Mizen wanted to punish Ms. Willis for filing a claim with the EEOC.

■ There is no dispute between the parties that, on at least three separate occasions, a first-line supervisor discovered tardy invoices in Ms. Willis' files or work area. No party disputes that three such offenses would warrant dismissal under Marion County's personnel policy. The evidence presented to the jury permitted, although it did not compel, the conclusions that Conklin and Hupp bore a great deal of ill will toward Ms. Willis because of her race and that Conklin had planted the invoices. This evidence, standing alone, is not a sufficient basis for the verdict. Statements by subordinates normally are not probative of an intent to retaliate by the decisionmaker. *See Konowitz v. Schnadig Corp.,* 965 F.2d 230, 233 n. 1 (7th Cir.1992) (citing *Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1221 (7th Cir.1991)); *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1155 (7th Cir.1989) (noting that actions and comments by employees not involved in a discharge decision cannot provide a basis for a determination of discrimination). Conklin and Hupp did not make the decision to fire Ms. Willis; Mizen did. Moreover, it is clear that Mizen accepted full responsibility for the decision and did not accept uncritically the assertions of her subordinates. When Ms. Willis alleged to Mizen that the first reprimand was bogus and a pretext for Conklin's racism, Mizen asked Ms. Willis to provide supporting materials or more detail to her allegations that Conklin had planted the tardy invoices to get Ms. Willis fired. Ms. Willis failed to provide any further information.

Notably, at the time that Ms. Willis received the third reprimand that triggered her discharge, the only one received after she filed her discrimination claim, Conklin was on vacation. Ms. Willis was given an opportunity to explain the deficiencies in her

work at a meeting of the managers, including Mizen. Indeed, her explanation was accepted with respect to one of the invoices in question. Mizen then terminated Ms. Willis' employment because the Marion County Personnel Manual required such action after three reprimands in a one-year period. As the district court noted, moreover, Mizen was out of the office on maternity leave for much of the spring of 1992, when Ms. Willis filed her discrimination claim.

We agree with the district court that there was no evidence presented at trial of any connection between Mizen's decision to terminate Ms. Willis for receiving three written reprimands and Ms. Willis' filing of a charge of discrimination. *Cf. Hiatt,* 26 F.3d at 769 (noting that, at trial, plaintiff bears the burden of proving that prohibited animosity played a causal role in his termination). There was also no evidence presented at trial that Mizen harbored a race-based animus toward Ms. Willis.

### B.

■ As the district court recognized, there can be situations in which the forbidden motive of a subordinate employee can be imputed to the employer because, under the circumstances of the case, the employer simply acted as the "cat's paw" of the subordinate. *See Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir.1990) (holding that if review committee that was unaware of district manager's age-based animus acted "as the conduit of [manager's] prejudice—his cat's paw—the innocence of its members would not spare the company from liability"). Our cases have noted that this situation may occur in an instance in which a subordinate, by concealing relevant information from the decisionmaker, is able to manipulate the decisionmaking process and to influence the decision. *See Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1400 (7th Cir.1997) (citing cases); *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1147 (7th Cir.1993). These cases prevent an employer from escaping liability by setting up many layers of pro forma review, thus making the operative decision that of a subordinate with an illicit motive. *Gusman,* 986 F.2d at 1147; *see Shager,* 913

F.2d at 405. In such a case, a jury may impute the discriminatory motive of the biased subordinate, as opposed to the motives of the ignorant decisionmaker, to the company. This court has not yet had an occasion to set in any definitive way the outer contours of this exception. *See Wallace,* 103 F.3d at 1401 (noting that discrimination cases would be fraught with uncertainty if de facto authority were allowed to trump de jure authority in many corporate settings). However, it is clear that, when the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissible basis, the bias of the subordinate is not relevant. *Long v. Eastfield College,* 88 F.3d 300, 307 (5th Cir.1996) (stating that, if decisionmaker based his decision on his own independent investigation, the causal link between the subordinates' allegedly retaliatory intent and the terminations would be broken); *cf. Conn v. GATX Terminals Corp.,* 18 F.3d 417, 420 (7th Cir.1994) (arising in context of duty of fair representation).

■ We agree with the district court that this case is not one in which a reasonable jury could have concluded that Mizen in any way was merely Conklin's "cat's paw" or that the review process was a sham or conduit for Conklin's alleged racial animosity. The record affirmatively demonstrates that Mizen's estimation of the quality of Ms. Willis' work was not jaded by anyone else's subjective and possibly racially biased evaluation. Mizen was presented with objective violations of Marion County policy: Invoices that had not been processed in a timely manner were discovered in Ms. Willis' files on at least three separate occasions by two supervisors. Further, Mizen knew of Ms. Willis' charges that Conklin had planted the invoices; indeed, she had afforded Ms. Willis an opportunity to substantiate her claim. *Cf. Conn,* 18 F.3d at 420 (finding that non-decisionmaker's animus did not infect the decisionmaking process when the plaintiff was able to appear before the decisionmaker and present his side of the story). After the first incident between Conklin and Ms. Willis, Ms. Willis informed Mizen that, in her opinion, the un-

processed invoices had been placed in her files by Conklin and that Conklin had done so because of her racial prejudices. Mizen took these allegations seriously; she asked Ms. Willis to provide more specific information to evaluate the charges. Ms. Willis failed to respond. Similarly, after Ms. Willis' third written reprimand for failing to process her invoices in conformity with Marion County policy, Mizen gave Ms. Willis the opportunity to explain why she had eight invoices in her file that violated the three-day turnaround policy. Ms. Willis claimed that some of the invoices already had been paid, that others were not her responsibility, and that the remaining invoices must have been intentionally held and then planted in her files. Mizen determined that it was possible that one of the particular invoices was not Ms. Willis' responsibility, and that infraction was not included in her reprimand. However, Mizen believed that the remaining seven invoices that had not been processed violated the three-day turnaround policy for which Ms. Willis appropriately should be reprimanded. Because this was Ms. Willis' third such reprimand in a one-year period, she was terminated. A grievance panel upheld the third reprimand and the termination.

■ Mizen's proactive involvement in examining Ms. Willis' allegations with respect to the only reprimand that was issued after Ms. Willis had filed her discrimination charge makes Mizen's decision to fire Ms. Willis quite unlike the situation alleged by the plaintiff in *Shager*. *See Pierce v. Atchison, Topeka & Santa Fe Ry.*, 65 F.3d 562, 574 (7th Cir.1995) (" 'If the [decisionmaking] Committee was not a mere rubber stamp, but made an independent decision to fire Shager, ... there [would] be no ground for a finding of willful misconduct' based on another supervisor's age bias." (brackets in original) (quoting *Shager*, 913 F.2d at 406)); *see also Long*, 88 F.3d at 307 (stating that decisionmaker's independent investigation breaks the causal link between firings and subordinates' retaliatory intent); *Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir.1992) (indicating that when decisionmaker conducted an independent investigation, subordinate's discriminatory motive not attributed to employer). Mizen, knowing of the allegations of racism, independently evaluated whether Ms. Willis had violated the county policy for processing invoices or whether Conklin had retaliated against Ms. Willis for alleging discrimination. Mizen, being fully aware of the situation, decided that the evidence justified Ms. Willis' discharge. Nothing was presented at trial to suggest that Ms. Mizen's belief was not genuinely held. *Cf. Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir.1997) ("[T]he pertinent question is not whether [the decisionmaker] was right to believe that [Ms. Willis violated county policy] and that as a result [she] should be discharged, but whether [Mizen's] belief that this was so was genuine....."). Whether Mizen was correct in her conclusion is immaterial. *See id.* at 410–11. The court does not sit as a super-personnel panel. *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1291–93 (7th Cir.1997). Even a bad or mistaken business decision does not violate Title VII if the basis for that decision is not retaliatory. *Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 481 (7th Cir.1995); *see also Essex v. United Parcel Serv.*, 111 F.3d 1304, 1311 (7th Cir.1997) (stating that "the important question is the honesty, not the accuracy, of UPS's belief"). Ms. Willis failed to carry her burden by presenting sufficient evidence from which a jury could conclude that Conklin or Hupp was the de facto decisionmaker in this case and that Mizen was duped into being the conduit for their retaliation.

There is no evidence from which a reasonable jury could conclude that Mizen personally retaliated against Ms. Willis or that Mizen was the unwitting dupe by which Conklin or others were able to retaliate against Ms. Willis. Therefore, the district court correctly held that the jury's verdict cannot stand.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.