United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 26, 1998 Decided May 12, 1998

 No. 97-7074

 Juanita Griffin, 

 Appellant

 v.

 Washington Convention Center 

 Appellee

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 93cv02297)

 Richard H. Semsker argued the cause and filed the briefs 
for appellant. Solaman G. Lippman entered an appearance.

 William F. Causey argued the cause for appellees. John 
M. Ferren, Corporation Counsel, Charles L. Reischel, Deputy 
Corporation Counsel, Carol Elder Bruce and Eric C. Grimm 
were on the brief.


 Before: Ginsburg, Sentelle, and Garland, Circuit Judges.

 Opinion for the court filed by Circuit Judge Ginsburg.

 Concurring opinion filed by Circuit Judge Sentelle.

 Ginsburg, Circuit Judge: When the Washington Conven-
tion Center discharged Juanita Griffin from her position as an 
electrician, Griffin brought suit alleging sex discrimination in 
violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 
s 2000e et seq. At trial, the magistrate judge excluded 
evidence tending to show that Griffin's immediate supervisor 
was opposed to women working as electricians. The WCC 
defends that evidentiary ruling on the ground that the super-
visor's alleged bias was irrelevant because he lacked authority 
to fire Griffin; it was his superior, a woman, who made the 
ultimate decision to fire the plaintiff. The WCC admitted, 
however, that the plaintiff's supervisor participated at every 
stage of the process that led to her termination.

 We hold that evidence of a subordinate's bias is relevant 
where, as here, the ultimate decisionmaker is not insulated 
from the subordinate's influence. The magistrate judge 
therefore erred in excluding evidence of the supervisor's bias. 
Accordingly, we reverse the judgment of the district court 
and remand the case for a new trial.

 I. BACKGROUND

 Juanita Griffin went to work for the WCC as an apprentice 
electrician in 1984. Griffin worked in the "engineering" 
department doing routine maintenance, such as changing 
light bulbs. She had little occasion to develop her skills but 
got favorable performance evaluations. In 1987 she received 
her journeyman electrician's license. As a result of the 
reorganization that the WCC carried out that same year, 
Griffin came under the supervision of Cleo Doyle, a man who 
regarded Griffin as incompetent. According to Griffin, Doyle 
repeatedly said that women should not be working as electri-
cians but should stay at home, "barefoot and pregnant."


 Doyle recommended to his superior, Director of Operations 
Reba Evans, that Griffin be fired. After a series of meetings 
with Doyle, Griffin, and Randolph Scott--Griffin's union rep-
resentative--Evans decided to have Doyle and Scott develop 
a training program for Griffin (and two other employees 
about whom Doyle had complained), after which Doyle would 
test Griffin's skills. When Griffin had repeatedly failed the 
test, Doyle again recommended that Griffin be fired. After 
further consultation with Scott and others, Evans discharged 
Griffin.

 Griffin then filed a complaint with the D.C. Department of 
Human Rights charging the WCC with sex discrimination. 
Upon receiving a right-to-sue letter she brought suit under 
Title VII in district court. Griffin's counsel planned to offer 
the testimony of Griffin and two (male) coworkers detailing 
various sexist remarks allegedly made by Doyle. Before the 
trial began, however, the magistrate judge granted the 
WCC's motion in limine to exclude any reference to Doyle's 
comments about the proper role of women. When Griffin's 
lawyer later elicited testimony concerning Doyle's comments, 
the judge instructed the jury to disregard the testimony. 
The judge did, however, permit the following exchange during 
the cross-examination of Evans by Griffin's lawyer:

Q.You don't recall testifying that Ms. Griffin told you 
 she had concerns because she believed Mr. Doyle 
 and Mr. Fleming [another of Griffin's superiors] 
 were sexists?

A.I remember the conversation, yes.

Q.Do you recall what specifically she told you in that 
 regard?

A.No, I don't. Most of the focus that I remember was 
 with regard to her performance.

Q.Do you recall her telling you that Mr. Doyle had 
 made a statement to her that he believed that she 
 should be at home, barefoot and pregnant? Do you 
 recall her telling you that?


A.No, I don't.

 The jury returned a verdict for the WCC. Griffin appeals.

 II. ANALYSIS

 Griffin claims that the magistrate judge committed revers-
ible error when he excluded as irrelevant testimony about 
Doyle's sexist remarks. The WCC responds that the judge 
did not err at all in excluding the testimony because Doyle 
was not responsible for Griffin's dismissal and Evans, who 
was responsible, based her decision upon an objective test of 
Griffin's skills--a test developed and supervised in part by 
Griffin's union representative. In the alternative, the WCC 
argues that the exclusion of the disputed testimony was 
harmless error in light of all the evidence indicating that 
Griffin was fired for incompetence.

 A.Relevance

 The magistrate judge initially regarded Griffin's effort to 
introduce testimony about Doyle's comments as an attempt to 
smuggle into the record evidence relevant only to theories of 
recovery that Griffin had failed to raise in her complaint to 
the Department of Human Rights. In his order granting the 
WCC's motion in limine the judge explained:

 Evidence of a course of conduct as well as statements 
 designed to show intent to sexually harass relevant to a 
 claim of maintaining a sexually hostile work environment 
 is not relevant to a claim of sexual discrimination in job 
 training.

During Griffin's opening statement, the WCC objected to 
Griffin's reference to expected testimony on the issue of 
Doyle's bias. The magistrate judge sustained the objection, 
apparently because he still regarded the testimony as rele-
vant only to a sexual harassment claim that had not been 
preserved for trial. Later in the course of the trial the 
magistrate judge shifted his ground somewhat:

 [T]his witness [Doyle] did not have any authority to hire 
 or fire individuals. He made a recommendation and, on 


 a number of occasions, his recommendation was over-
 ruled. So, he was not the one who had the ultimate 
 authority on it.

 Griffin has argued from the outset that the excluded testi-
mony is probative of Doyle's motive and intent and relevant 
to the case because Doyle was responsible for Griffin's train-
ing and participated in the decisionmaking process that led to 
her discharge. The WCC, on the other hand, argues that 
Doyle's motive and intent are not relevant because Evans, not 
Doyle, made the decision to fire Griffin.

 The WCC relies upon the reasoning of a recent case in the 
Seventh Circuit:

 [W]hen the causal relationship between the subordinate's 
 illicit motive and the employer's ultimate decision is 
 broken, and the ultimate decision is clearly made on an 
 independent and a legally permissive [sic] basis, the bias 
 of the subordinate is not relevant.

Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 
(1997). So much is uncontroversial; even Griffin agrees with 
the principle. Hence, if it is true, as the WCC argues, that 
Evans's "decision [to terminate Griffin was] independent of, 
or insulated from" Doyle, then the evidence of Doyle's bias 
was properly excluded as irrelevant.

 Griffin maintains, however, that "Doyle was in fact an 
integral part of the decision-making process" that led to her 
discharge, so that Doyle's discriminatory motive "would have 
infected any deliberations over whether to terminate Plain-
tiff's employment." We agree. Unlike the court in Willis, 
we cannot say that "[t]he record affirmatively demonstrates 
that [the decisionmaker's] estimation of the quality of [plain-
tiff's] work was not jaded by anyone else's subjective and 
possibly [sexually] biased evaluation." 118 F.3d at 547.

 On the contrary, Doyle was Evans's chief source of infor-
mation regarding Griffin's job performance, repeatedly urged 
Evans to terminate Griffin, was then made responsible for 
training Griffin, helped develop the tests used to assess 
Griffin, was responsible for evaluating Griffin's success on 


those tests, and was in contact with Evans at every significant 
step in the decisionmaking process. Under these circum-
stances, in which Evans's dependence upon Doyle's opinion 
was heightened by her inability independently to assess Grif-
fin's technical proficiency, a jury exposed to the excluded 
evidence of Doyle's sexism might well conclude that Doyle 
used Evans, in Judge Posner's phrase, "as the conduit of [his] 
prejudice--his cat's-paw." Shager v. Upjohn Co., 913 F.2d 
398, 405 (7th Cir. 1990).

 That Randolph Scott, a representative of Griffin's union, 
and others participated in the decisionmaking process togeth-
er with Doyle was not sufficient to insulate Evans from 
Doyle's influence. By his own estimate, Scott personally 
observed only some five percent of Griffin's training. Like 
Evans, Scott depended upon Doyle's observations and evalua-
tion for most of his knowledge about Griffin's performance. 
Evidence of Doyle's intent is therefore relevant in evaluating 
Griffin's termination, and the magistrate judge erred by 
excluding it.

 Thus do we join at least four other circuits in holding that 
evidence of a subordinate's bias is relevant where the ultimate 
decision maker is not insulated from the subordinate's influ-
ence. See Stacks v. Southwestern Bell Yellow Pages, Inc., 27 
F.3d 1316, 1323 (8th Cir. 1994) ("an employer cannot escape 
responsibility for [ ] discrimination ... when the facts on 
which the reviewers rely have been filtered by a manager 
determined to purge the labor force of [a protected class of] 
workers"); see also, e.g., Abrams v. Lightolier, Inc., 50 F.3d 
1204, 1214 (3d Cir. 1995); Simpson v. Diversitech General, 
Inc., 945 F.2d 156, 160 (6th Cir. 1991); Shager v. Upjohn Co., 
913 F.2d 398, 405 (7th Cir. 1990); cf. Steverson v. Goldstein, 
24 F.3d 666, 670 (5th Cir. 1994).

 B.The Opened Door Doctrine

 The magistrate judge's exclusion of testimony about 
Doyle's alleged bias is particularly surprising in light of the 
admission in evidence of Doyle's self-serving statements 
about his lack of discriminatory intent. When Doyle testified 
on direct examination that he had recommended to Evans 


that three employees, including Griffin, be terminated, the 
following exchange ensued:

Q.Did you make those recommendations because they 
 were women?

A.No.... It has nothing to do with women. It has to 
 do with someone who has an electricians' [sic] license 
 who did not know basic fundamentals.

 By eliciting that testimony, the WCC "opened the door" to 
matters excluded by its own motion in limine. Testimony 
impugning Doyle's intent should have been admitted on re-
buttal at least for purposes of impeachment and in order to 
prevent the jury from forming the erroneous impression that 
the proper characterization of Doyle's intent was undisputed. 
See United States v. Baird, 29 F.3d 647, 654 (D.C. Cir. 1994) 
("Once the door is opened, the other party can get through it 
otherwise irrelevant evidence 'to the extent necessary to 
remove any unfair prejudice which might otherwise have 
ensued' "). Yet when Griffin's counsel tried to bring the 
excluded evidence in through the door opened during the 
defendant's case-in-chief, the magistrate judge denied the 
motion, thus compounding his error.

 C.Harmless Error

 The WCC maintains that any error in the exclusion of 
evidence concerning Doyle's views on women as electricians is 
harmless because of the overwhelming evidence that Griffin is 
an incompetent electrician. That evidence does not, however, 
render harmless the exclusion of the testimony regarding 
Doyle's intent. Most of the evidence of Griffin's incom-
petence comes from the selfsame Doyle, and a jury might 
weigh that evidence differently if it had reason to believe that 
Doyle did not want women electricians in his shop. More-
over, the gravamen of Griffin's complaint is that her apparent 
incompetence was the product of Doyle's animus against 
women, which led him to neglect her training and then to test 
her for skills that she did not need in order to do her job.

 For these reasons we think that a reasonable jury that 
heard the excluded evidence might have decided that the 


plaintiff was fired because of her sex notwithstanding the 
evidence that she was terminated for incompetence. Accord-
ingly, we must remand the case for a new trial.

 III. CONCLUSION

 Cleo Doyle played a central role in the decisionmaking 
process that led to Griffin's termination. That Randolph 
Scott and others also participated did not insulate Reba 
Evans, the ultimate decisionmaker, from Doyle's influence in 
deciding whether to fire Griffin. The testimony of three 
witnesses that Doyle had said women should not be electri-
cians and Griffin's testimony that he had told her she should 
be at home, barefoot and pregnant, would permit a reason-
able jury to infer that Griffin lost her job on account of her 
sex. Therefore, the magistrate judge's exclusion of that 
testimony was error, and we cannot rule out the possibility 
that the error affected the outcome of the trial. Accordingly, 
we vacate the judgment of the district court and remand the 
case for a new trial.

It is so ordered.



 Sentelle, Circuit Judge, concurring: I join in my col-
leagues' judgment reversing the judgment of the district 
court and remanding for a new trial, but I do so with the 
utmost reluctance. When we review the evidentiary rulings 
of a trial judge, we should be ever mindful of the express and 
stringent standards set forth in Rule 103 of the Federal Rules 
of Evidence that "[e]rror may not be predicated upon a ruling 
which admits or excludes evidence unless a substantial right 
of the party is affected...." In applying that rule we have 
held, as have all other circuits, that district judges enjoy 
broad discretion in their evidentiary rulings, and that we will 
reverse such rulings "only if [they] are an abuse of discre-
tion." Carey Canada, Inc. v. Columbia Cas. Co., 940 F.2d 
1548, 1559 (D.C. Cir. 1991). On the record before us, taken 
as a whole, that abuse of discretion is not apparent.

 The evidence excluded by the district court went to the bias 
of a subordinate and not the decision maker. As the majority 
recognizes:

 [W]hen the causal relationship between the subordinate's 
 illicit motive and the employer's ultimate decision is 
 broken, and the ultimate decision is clearly made on an 
 independent and legally permissive [sic] basis, the bias of 
 the subordinate is not relevant.

Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 
(7th Cir. 1997). The record before us is at least consistent 
with, if not compellingly supportive of, a conclusion that 
Evans, the ultimate decision maker, made the decision to 
terminate appellant based on an objective test administered 
with the participation of her union representative. This 
testing alone would seem enough to break any causal relation-
ship between Doyle's alleged bias and that decision. While 
appellant is able to tease out of the record tenuous support 
for the proposition that the causal connection was unbroken, I 
find that to be a thin reed upon which to rest a reversal of a 
final judgment based on an evidentiary ruling subject to an 
abuse of discretion standard. It is most difficult to see this 
ruling as affecting a "substantial right" of appellant.


 In the end, I join the reversal solely because of the theory 
advanced in Part IIB of my colleagues' opinion. That is, 
appellee "opened the door" to matters excluded by its own 
motion in limine. See United States v. Baird, 29 F.3d 647, 
654 (D.C. Cir. 1994). Under that theory--advanced, I might 
add, more articulately by my colleagues than by appellant--I 
agree that the trial judge's exercise of discretion crossed the 
boundary of abuse, and I therefore join in the reversal.