Shelley A. TURNER, Plaintiff,

v.

SHONEY'S, INC., d/b/a Fifth Quarter, Defendant.

No. IP 96–1228–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 16, 1999.

John H. Haskin, Haskin, Lauter, Cohen & Larue, Indianapolis, IN, for plaintiff.

Larry G. Evans, Nancy E. Murphy, Hoeppner, Wagner & Evans, Valparaiso, IN, for defendant.

## ENTRY ON OBJECTIONS TO MAGISTRATE JUDGE'S DISCOVERY ORDER

HAMILTON, District Judge.

On May 21, 1998, plaintiff Shelley A. Turner moved for an order extending certain case management deadlines and expanding the permissible scope of discovery. Magistrate Judge Godich granted the extension of deadlines. He denied the expansion of the scope of discovery. As is customary on many case management orders, especially those involving deadlines, he ruled with a marginal notation on plaintiff's motion and did not set forth an explanation of his order. Pursuant to Fed.R.Civ.P. 72(a), plaintiff Turner then filed an objection to that portion of Judge Godich's order denying the expansion of discovery. Defendant Shoney's, Inc. has responded.

Under Rule 72(a), my responsibility in this case is to determine whether the magistrate judge's order was clearly erroneous or contrary to law. That task is difficult when the order provides no explanation, as many similar orders dealing with case management matters do not. The issue of the scope of discovery, however, can be critical to the merits of a case. Plaintiff's original motion explained the basis for the requested expansion. Her objections to Judge Godich's order includes considerably more detail and evidentiary support than she provided with her original motion.[1]

Judge Godich had originally limited the scope of plaintiff's discovery about similarly situated employees to other employees at the same restaurant—The Fifth Quarter—who were terminated during 1993 or 1994 under the codes for "manager's loss of confidence" as the reason for termination, or who were charged with sexual harassment during those same years. The court has no doubt that that was a reasonable limitation at the outset of the case, at least on the assumption that the critical decision to fire plaintiff was made by Kevin Henderson, the manager of The Fifth Quarter restaurant.

Plaintiff argues that the limitation is no longer fair because discovery has shown that, although manager Henderson was the nominal decisionmaker, he was carrying out a corporate policy and "recommendation" that were the equivalent of orders. After reviewing Henderson's deposition testimony, the court agrees that plaintiff is clearly entitled to pursue broader discovery at the corporate level concerning policies toward accusations of sexual harassment and toward employees accused of sexual harassment.

The story begins when manager Henderson received an anonymous letter complaining about plaintiff Turner. The letter appeared to come from co-employees. As defendant presents the issue, because the complaint included allegations of sexual harassment, Henderson notified the corporate EEO hotline as required pursuant to Shoney's corporate policy. The corporate human resources department assigned Johnny Southerland to investigate the letter. Southerland spent two days investigating the complaints in the letter, interviewing between 15 and 20 employees of The Fifth Quarter.

---

1. For that reason, the court believes that the facts and arguments in plaintiff's objection probably should have been directed in the first instance to Judge Godich with a request for reconsideration or explanation. In the interests of avoiding further delay, however, I have decided to resolve the issue now on the existing record.

Southerland then recommended to Henderson that he fire Turner. As defendant characterizes the evidence, Southerland merely made a recommendation, and Henderson was the final decision-maker with ultimate authority to decide whether to fire Turner.

Defendant accuses plaintiff of "misrepresenting" the record by arguing that Henderson was not the final decision-maker. Defendant's accusation is not justified. In fact, if one were inclined to sling such language around lightly, the accusation could easily be made in reverse. Defendant states: "Mr. Henderson testified that he was the final decision-maker regarding the plaintiff's termination. [Henderson Dep. at 125]." Def. Br. at 4. That is true. Henderson said yes in response to a lawyer's question using that term. But the cited passage of page 125 of Henderson's deposition reads as follows:

Q Based upon Mr. Southerland's investigation, did you conclude that Shelley Turner should be terminated?

A He made the recommendation, and I approved it.

Q All right. And you were the final decision-maker?

A Yes. *Had I not made that decision, I think somebody else would have made it for me.*

(Emphasis added.) Henderson also testified that he understood that Southerland's recommendation was based on a corporate "non-tolerance policy for sexual harassment." Henderson Dep. at 39. In a statement that is ambiguous as to whether it refers to contacting corporate headquarters or to the policy of non-tolerance, Henderson added: "It was really out of our hands at that point. * * * I mean, we had a zero tolerance. * * * And that was at the Anita Hill-ish time." Henderson Dep. at 40.

Southerland testified that as long as "we" had substantial evidence of sexual harassment, "we would recommend termination." Southerland Dep. at 68. In addition, based on the excerpts of evidence presented to me, there are at least some questions about whether Southerland's testimony about the reasons for his recommendation to fire plaintiff was consistent with Henderson's testimony about the reasons, and there is some indication that Shoney's no longer has Southerland's written report of his investigation. See *id.* at 37.

At least one of plaintiff's theories here is that the stated reason for firing her was a pretext. One may fairly read the evidence submitted to me as showing that Henderson thought he fired plaintiff pursuant to a company-wide policy of zero tolerance of sexual harassment, and that Henderson thought he did not have any real choice. Even if he and the company agree he was the designated "ultimate decision-maker," plaintiff is entitled to a fair opportunity to see just how uniform the corporate "non-tolerance policy for sexual harassment" actually was in practice.

▪ Identifying the relevant decision-maker in a disparate treatment case is absolutely critical. See *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 546 (7th Cir.1997), and cases cited therein. A plaintiff is not required to take on faith the defendant's designation of a decision-maker. A plaintiff is entitled to probe and test the extent to which the designated person exercised independent judgment or instead carried out the policies or prejudices of others. See *id.* Although Henderson intoned the correct words to support defendant's theory that he was the decision-maker here, his additional testimony permits the conclusion that he felt he had no real choice in the matter: "Had I not made that decision, I think somebody else would have made it for me."

▪ In light of these considerations, I am persuaded that the denial of the expansion of the scope of discovery was contrary to law. It would unfairly deny plaintiff the opportunity to test for consistency the defendant's asserted reasons for firing her, *i.e.*, to test whether the proffered reasons was merely a pretext for unlawful discrimination. The evidence submitted to me provides ample grounds for pursuing this discovery. Accordingly, plaintiff's objection to Judge Godich's order of May 22, 1998, is hereby SUSTAINED, and plaintiff is entitled to pursue discovery concerning Shoney's treatment of employees accused of sexual harassment during 1993 and 1994. To the extent that addi-

tional orders are needed to modify schedules and to carry out this discovery, the parties should take those matters up with Judge Godich in the first instance.

So ordered.